## UNITED STATES · v. WILSON.

### APPEAL FROM THE COURT OF CLAIMS.

No. 1157. Argued January 26, 1892. — Decided March 14, 1892.

Under the act of March 3, 1883, " to adjust the salaries of postmasters," 22 Stat. 600, c. 142, a postmaster who is assigned by the Postmaster General to the third class, at a designated salary, from a designated date, is entitled, if he performs the duties of the office, to compensation at the rate of that salary, from that date, without regard to his appointment by the President and confirmation by the Senate.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Parker* for appellant.

*Mr. Harvey Spalding* for appellee.

MR. JUSTICE LAMAR delivered the opinion of the court.

This was an action in the Court of Claims by a late postmaster of Chadron, Nebraska, to recover an alleged balance of salary claimed to be due.

The material facts are these: The claimant was a fourth-class postmaster, duly appointed and qualified, at Chadron, Nebraska, from July 1, 1885, to January 25, 1887. When he was first appointed the salary of the office was $1000 a year; and it continued at that figure until October 1, 1886, when, by an order of the Postmaster General, issued a few days previously, the office was assigned to the third class, and the salary was increased to $1600 a year. Although the office

was thus advanced in rank and the salary attached to it increased, and the claimant continued to discharge the duties of it, he was not commissioned by the President a third-class postmaster until January 25, 1887; and, under an order of the Sixth Auditor, dated November 16, 1886, he was not permitted to enjoy the benefits of the increased salary until he was commissioned a third-class postmaster, but continued to draw a salary from October 1, 1886, to January 25, 1887, at the rate of only $1000 a year. Insisting that his salary for the period last mentioned should have been at the rate of $1600 a year, under the order of the Postmaster General, instead of at the rate he was paid, the claimant brought his action in the Court of Claims to recover such alleged balance. That court sustained his claim, and rendered judgment in his favor for $190, that being the difference between the amount of his salary for the period mentioned at $1000 a year and at $1600 a year. 26 C. Cl. 186. From that judgment the United States appealed.

To understand the precise nature of the question involved in this case, a reference to the act of March 3, 1883, c. 142, 22 Stat. 600, 602, relating to the salaries of postmasters, is necessary. Section 1 of that act reads thus:

"That the respective compensation of postmasters of the first, second and third classes shall be annual salaries, assigned in even hundreds of dollars, and payable in, quarterly payments, to be ascertained and fixed by the Postmaster General from their respective quarterly returns to the Auditor of the Treasury for the Post Office Department, or copies or duplicates thereof, to be forwarded to the First Assistant Postmaster General, for four quarters immediately preceding the adjustment, at the following rates, namely."

Then follows a table of what shall constitute offices of the various classes, with the salary attached, the salary in each instance being made dependent upon the gross receipts of the office; and, with reference to third-class offices, the section, in one paragraph, provides as follows:

"Gross receipts, four thousand two hundred dollars, and not exceeding five thousand dollars, salary, one thousand six hundred dollars."

Offices whose gross receipts are less than $1900 per annum are assigned to the fourth class; and by section 2 of the act it is provided that the salary of postmasters of that class shall be determined by a graduated scale of commissions upon postages, etc., and the box rents collected, the same to be ascertained and allowed by the Auditor of the Treasury for the Post Office Department in the settlement of the accounts of such postmasters upon their sworn quarterly returns. The second section then provides as follows:

"That when the compensation of any postmaster of this class shall reach two hundred and fifty dollars for four consecutive quarters each, exclusive of commissions on money order business, and when the returns to the auditor for four consecutive quarters shall show him to be entitled to a compensation in excess of two hundred and fifty dollars per quarter, the auditor shall report such fact to the Postmaster General, who shall assign the office to its proper class, and fix the salary of the postmaster as provided by section one of this act."

"Sec. 3. That the Postmaster General shall make all orders relative to the salaries of postmasters; and any change made in such salaries shall not take effect until the first day of the quarter next following the order; and the auditor shall be notified of any and all changes of salaries."

Reverting again to the facts of the case as found by the Court of Claims, and applying the statute just referred to, a satisfactory solution of the question involved will be found. The third and fourth findings by the Court of Claims are that for the four quarters between July 1, 1885, and July 1, 1886, the claimant made returns from his office to the auditor showing gross receipts amounting to $4912.99, of which $338.50 was from box rent; and that the auditor thereupon reported this fact to the Postmaster General, with a statement showing that the claimant, upon these returns, would be entitled to commissions and box rents amounting to $2150.85 for the four quarters, being at the rate of $537.71 per quarter.

Here, then, was a case in which the returns made by the postmaster to the auditor showed the postmaster "to be entitled to a compensation in excess of two hundred and fifty

dollars per quarter." What, then, was the duty of the auditor? To do precisely as he did do, viz.: "report such fact to the Postmaster General." The duty of the auditor in the premises thereupon ceased. It was completed; and the statute then cast a duty upon the Postmaster General, viz.: to "assign the office to its proper class and fix the salary of the postmaster, as provided by section one" of the act. The fifth finding by the Court of Claims shows that herein the Postmaster General performed the duty enjoined upon him by the statute; for, on the 27th of September, 1886, an order was issued from his department as follows:

"*Ordered,* That the post office at Chadron, Nebraska, be assigned to the third class, and the salary of the postmaster fixed at $1600 a year, from October 1, 1886.

"A. E. STEVENSON,
"*First Assis't P. M. General.*"

All this was in exact conformity to the letter of the statute of 1883. The gross receipts of the office for the four quarters ending July, 1886, were more than $4200 and less than $5000; consequently the statute fixed the salary of the postmaster at $1600 a year. By section 3 of the act the change made in the salary could not "take effect until the first day of the quarter next following the order." The next quarter commenced October 1, 1886. Thus it was that the order of the First Assistant Postmaster General designated October 1, 1886, as the day when it should go into operation. The statute was then fulfilled. Its terms had been carried out. The office had been properly changed to one of the third class, and the salary of the postmaster had been changed to meet the mandate of the law. Whoever was then performing the duties of postmaster at that office became entitled to the salary thus fixed. It matters not that the President did not commission a third-class postmaster at that office until some months thereafter. The President had nothing to do with the salary attached to the office. That had been fixed absolutely by the Postmaster General, under the express directions

of a law of Congress. Neither could the salary of the postmaster be affected by any subsequent order of the Sixth Auditor, as was attempted to be done in this case; for, as already stated, his duty and authority in the premises ceased when he made his report of the business transactions of the office to the Postmaster General. The whole theory of the act of 1883 is that every postmaster shall receive a salary dependent upon and regulated by the amount of business done at his office. The intent of the statute in this respect appears so plain upon a careful reading of it that it is difficult to elucidate it by argument or illustration. The mere statement of its terms is the best argument in favor of the conclusion we have reached.

The judgment of the Court of Claims was correct, and it is

*Affirmed.*