WETZSTEIN, APPELLANT, *v.* LARGEY ET AL.,
RESPONDENTS.

(No. 1,462.)

(Submitted May 7, 1902.   Decided November 24, 1902.)

*Mining Claims—Fraudulent Patent—Title — Quitclaim Deed —Innocent Purchaser — Notice—Lost Deed — Evidence— Equity Action—Instructions — Verdict of Jury—Harmless Error.*

1.  Where in an equity action the special findings of fact of the jury were modified by the court, and their general verdict disregarded, errors in the instructions, or in permitting them to return a general verdict, were harmless.
2.  In an action brought to secure title to an interest in a mining claim, evidence examined, and *held* to justify a finding that the former owner conveyed the interest to defendants' predecessor in title prior to the execution of the quitclaim deed from the same owner under which plaintiff claimed.
3.  A finding of fact made in an equity case by the lower court on conflicting evidence will not be disturbed by the supreme court.
4.  All but one of the co-owners of a mining claim applied for a patent, presenting to the land office where the entry was made abstracts of title showing their interest, and also that of their co-owner. On appeal to the department at Washington the patent was obtained; no mention being made therein of the co-party, who had meanwhile parted with all his interest to one of the other parties to the patent. *Held,* that fraud for not including him in the application at the time of the original entry, and irregularity for lack of proof of his transfer of interest at the time of the final application, were alike harmless to him thereafter.
5.  Where at the time of the execution of a deed to mining property the grantee knew that another was in possession of the property, and claiming under an adverse, unrecorded deed, the grantee was not an innocent purchaser.
6.  A purchaser under a quitclaim deed takes only such title as the grantor has, and subject to any prior deed by the grantor to the same property.
7.  In an action attacking a claim to mining property based on a lost deed to defendants' predecessor in title, evidence was introduced tending to show that the prior owner, from whom both parties claim, in fear of an adverse decision in former litigation, which occurred subsequent to the alleged deed, relocated the claim, and redeeded to defendants' predecessor the same interest therein as defendants claimed under the lost deed. *Held* that, though the subsequent location was abandoned, the evidence was admissible, as showing the understanding of the former owner in regard to the claim of defendants' predecessor.

*Appeal from District Court, Silver Bow County; John Lindsay, Judge.*

ACTION by Adolph Wetzstein against P. A. Largey and others. From a judgment in favor of defendants, and from an order denying a new trial, plaintiff appeals. Affirmed.

*Messrs. McHatton & Cotter,* for Appellant.

Whenever a person, without the consent of the owner, receives a legal title which he seeks to withhold, he is guilty of sufficient fraud to constitute himself a trustee of such title for the owner. (*Turner* v. *Sawyer,* 150 U. S. 578; *Brundy* v. *Mayfield,* 15 Mont. 201.)

A consideration of the elements of an estoppel *in pais* will indicate a necessity for strictness in two matters, viz: (1) Pleading; (2) Proof. (Herman on Estoppel, Secs. 933, 948, 957, 974; *St. Louis M. & M. Co.* v. *Montana M. Co.,* 58 Fed. 129; *Boggs* v. *Merced. M. Co.,* 14 Cal. 279-368; *Grant* v. *Brandon C. & I. Co.,* 93 U. S. 326; *Storrs* v. *Barker,* 6 John's. Ch. 166; *Lux* v. *Haggin,* 69 Cal. 266; *Murphy* v. *Clayton,* 113 Cal. 153, 45 Pac. 267.)

In order for a party to obtain the benefit of an estoppel *in pais* it is necessary that he should plead it. (*Gilson* v. *Price,* (Nev.) 1 Pac. 459; *Clark* v. *Schuber,* 25 Cal. 594; *Davis* v. *Davis,* 26 Cal. at page 39; 8 Ency. Pl. & Prac. pp. 7, 9, 2, 10; Code of Civil Procedure, Secs. 690, 3145.)

When conveyances of real estate are required to be in writing, and the law authorizes or requires a record thereof to be made, and gives to such record the element of notice, no estoppel *in pais* can be either pleaded or established. The doctrine of estoppel *in pais* should not be extended to effect a divestiture of estate in lands, where the same can only be conveyed by instrument in writing. (*Parker* v. *Barker,* 2 Metc. 423; *Tolman* v. *Sparhawk,* 5 Metc. 469; *Brewer* v. *B. & W. R. R. Corp.,* 5 Metc. 478; *Jackson* v. *Sherman,* 6 Johns. 21; *Jackson* v. *Vossberg,* 7 Johns. 186.)

A party taking a quitclaim deed is not a *bona fide* purchaser; he is charged with notice of the true state of the title, and of all

adverse claims and existing equities. (*McAdow* v. *Black,* 6 Mont. 601; *Dickerson* v. *Colgrove,* 100 U. S. 578-584; *Johnson* v. *Williams,* 37 Kan. 179, 1 Am. St. Repts. 243; 16 Am. & Eng. Ency. of Law, p. 792; Civil Code, Sec. 4667; Code of Civil Procedure, Sec. 3465.)

The Comanche Mining Company was not a *bona fide* purchaser for a valuable consideration or without notice, for the reason that it bartered its capital stock for the quitclaim deed which it received. (*Franklin Mining Co.* v. *O'Brien,* 43 Pac. 1016.)

A purchaser under a quitclaim deed is not entitled to an after acquired title. (*Clark* v. *Barker,* 14 Cal. 612; *Morrison* v. *Wilson,* 30 Cal. 344; *Quivey* v. *Baker,* 37 Cal. 465; Devlin on Deeds, Sec. 27.)

The giving of erroneous and conflicting instructions entitles the plaintiff to a new trial. (*Kelly* v. *Cable Co.,* 7 Mont. 70; 16 Am. & Eng. Ency. Law, pp. 2, 552; *Murray* v. *Heinze,* 17 Mont. 353; *Davis* v. *Davis,* 26 Cal. 46.)

A verdict must be certain in order to support a judgment, and where a verdict is uncertain, a new trial will be granted. A conflict in the findings entitles the plaintiff to a new trial. (*Reece* v. *Corcoran,* 52 Cal. 495; *Mauley* v. *Howlett,* 55 Cal. 94; *Cottle* v. *Morris,* 57 Cal. 317; *Sloss* v. *Allman,* 64 Cal. 47; *Richards* v. *Dower,* 64 Cal. 62; *Carman* v. *Ross,* 64 Cal. 249; *Kerns* v. *McKeen,* 65 Cal. 412; *Randall* v. *Hunter,* 66 Cal. 513; *Learned* v. *Castle,* 78 Cal. 454.)

*Messrs. Forbis & Evans,* for Respondents.

*Mr. F. T. McBride,* for Respondents Largey and Tong.

It is a rule of presumptions that ordinarily a witness who testifies to an affirmative is to be preferred to one who testifies to a negative. (*Stitt* v. *Huidekopers,* 17 Wall. 384.)

Against positive affirmative evidence of credible witnesses to the existence of a fact the testimony of others whose evidence is of a negative character is unavailing. (*Culhane* ·v. *N. Y.*

*Cen. etc.,* 60 N. Y. 133; *Lomer* v. *Meeker,* 25 N. Y. 363; *Kelly* v. *Borroughs,* 102 N. Y. 93.)

Upton and those claiming under him are estopped from claiming the interest which Largey purchased from Collins. (*Storrs* v. *Barker,* 6 Johnson's Ch. 166; *Wendell* v. *Van Rens-selaer,* 1 Johns. Ch. 344; *Niven* v. *Balknap,* 2 Johns. 573; *Stephens* v. *Baird,* 9 Cowen, 274; *De Herques* v. *Marti,* 85 N. Y. 609; Herman on Estoppel, p. 1053; *Dickerson* v. *Colgrove,* 100 U. S. 578.)

It is well settled that a conveyance of property is effectual for the transfer of any interest which the grantor has therein, by whatsoever name the property may be described in the conveyance, so long as it is capable of being ascertained from the language employed in the conveyance what property is in fact intended to be granted. Where a name is used for the purpose of describing property intended to be conveyed, the property designated by the name employed will be deemed to have been conveyed, and a tract of land which has a well known name may be described by that name in a deed. The question as to what is conveyed is always one of intention, and where it appears that the parties to a conveyance knew the property by a specified name, although it was also known by another name, the property thus known is passed by the conveyance. (*Lebanon Mining Co.* v. *Con. Rep. Mng. Co.,* 6 Colo. 371, 379; *Haley* v. *Amestoy,* 44 Cal. 132; *Truett* v. *Adams,* 66 Cal. 218; *Martin* v. *Lloyd,* 94 Cal. 195-203; *Vejar* v. *Mound City Land & Water Ass'n,* 97 Cal. 659; *Schreve* v. *Copper Bell Mining Co.,* 11 Mont. 319; *Montana Mining Co.* v. *St. Louis M. & M. Co.,* 51 Pac. Rep. 824; *Phillpotts* v. *Blasdel,* 8 Nev. 61; *Weill* v. *Lucerne M. Co.,* 11 Nev. 200; *Shoshone M. Co.* v. *Rutter,* 87 Fed. 801.)

The declaration by Upton in his contract with Tong made in October, 1888, that all of his interest in the Comanche and Grand Prize lode claims was one-fourth only, operates as an estoppel of record and is conclusive evidence against Upton and his grantees as to the extent of his interest in said property at

that time.   There are numerous authorities to the effect that a
recital of this nature contained in a deed of conveyance is bind-
ing upon the party making the recital.   It is a solemn declara-
tion of record explanatory of the interest in the property con-
veyed.   (*Dundas* v. *Hitchcock,* 12 How. U. S. 256; Newell on
Ejectment, Sec. 1314; Code of Civil Procedure, Sec. 3125.)

The Comanche Mining Company when it acquired title to
the entire Comanche claim under a deed from the patentees was
not bound to make any investigation into the history of the title
preceding the issuance of the patent.   The proceedings resultᐧ
ing in the grant of such patent concluded the claims of all the
world to the property conveyed.   (U. S. Revised Statutes, Secs.
2325, 2332; 2 Lindley on Mines, Sec. 777.)

The conveyance by the patentees to the Comanche Mining
Company in exchange for the entire capital stock of that com-
pany, constituted the latter a *bona fide* purchaser for value, and
the fact that the grantors became the stockholders and officers
of the corporation did not charge it with notice of any infirmity
in the title of Mantle and Largey.   (*Frenkel* v. *Hudson,* 82
Ala. 158; *Whittle* v. *Vanderbilt M. & M. Co.,* 83 Fed. 48;
*Davis, etc. Co.* v. *Davis, etc. Co.,* 20 Fed. 699; 1 Morawetz on
Corporations, Sec. 234.)

The fact that the deed from the patentees to the Comanche
Mining Company was a quitclaim deed does not deprive the
latter of its standing as a *bona fide* purchaser.   (*Moeller* v.
*Sherwood,* 148 U. S. 21; *U. S.* v. *Cal. & O. Land Co.,* 148 U.
S. 31; *Nidever* v. *Ayers,* 83 Cal. 39; *McDonald* v. *Belding,*
145 U. S. 492; *White* v. *McGarry,* 47 Fed. 420; *Stanley* v.
*Schwalby,* 162 U. S. 255.)

The defense of laches is peculiarly applicable to the case at
bar.   (*Wolf* v. *Great Falls Co.,* 15 Mont. 57; *Penn. Mut. Life
Ins. Co.* v. *City of Austin,* 168 U. S. 685.)

The defense of laches may be raised at final hearing, even
though not pleaded, and the court may even on its own motion
apply the doctrine.   (*Larkin* v. *Sierra Buttes M. Co.,* 25 Fed.
Rep. 337; *Bratt* v. *California M. Co.,* 9 Sawyer, 354; *Hager-*

*man* v. *Bates* (Col.), 49 Pac. Rep. 139; *Woodmanse Mg. Co.* v. *Williams,* 68 Fed. 489; *Murphy* v. *De France,* 105 Mo. 53.)

It is the duty of the plaintiff to explain away the laches which may be predicated on his own action in his complaint. (*Foster* v. *Mansfield R. R. Co.,* 146 U. S. 89; *Leavenwood Co.* v. *Chicago etc. R. R. Co.,* 18 Fed. Rep. 209; *U. S.* v. *White,* 17 Fed. Rep. 561; *Badger* v. *Badger,* 2 Wall. 87; *Jones* v. *Perkins,* 76 Fed. Rep. 82.)

The claim of want of consideration is not available because it has not been pleaded. (4 Ency. Pl. & Prac. 946; *Winters* v. *Rush,* 34 Cal. 136; *Dubois* v. *Hermance,* 58 N. Y. 673; Civil Code, Sec. 2170.)

The purchaser of a mere equity is not a *"bona fide* purchaser."  (*Dupont* v. *Wertheimer,* 10 Cal. 354; *Wiles* v. *Cooper,* 24 Miss. 208; *Claw* v. *Barrett,* 11 S. & R. 389.)

One who seeks to charge another as trustee for his benefits must be held to clear, full and convincing proof of the trust. It will not be implied or presumed, except under the most extraordinary circumstances. (*Clarke* v. *Quackenbos,* 27 Ill. 260, 290; *Allen* v. *Wethrow,* 110 U. S. 119; *Burns* v. *Byrne,* 45 Iowa, 285; *Young* v. *Young,* 80 N. Y. 438; 27 Am. & Eng. Ency. of Law, 296-300.)

In an equity action such as this it is of no consequence if the instructions are in any respect inaccurate, since the court decides the case, and not the jury, the findings of the jury being merely advisory. (*Post* v. *Mason,* 91 N. Y. 539; *Sweetser* v. *Dobfries,* 65 Cal. 529; *Black* v. *Lamb,* 12 N. J. Eq. 108; *Schmeer* v. *Goodwin,* 57 Pac. 789 (Cal.); *Richardson* v. *City of Eureka,* 110 Cal. 441; *Lawlor* v. *Kemper,* 20 Mont. 13.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to obtain a decree declaring the defendants trustees of the legal title, for the use and benefit of the plaintiff, to an undivided one-fourth interest in the Comanche

lode claim (patented), situate in Silver Bow county, and directing them to execute and deliver to the plaintiff a conveyance thereof. The plaintiff sues as the grantee, by a mesne conveyance, of one David N. Upton, who, it is alleged, located the claim in connection with one N. L. Turner in 1879; thus becoming the owner of an undivided one-half interest therein. He alleges in his complaint that the said Upton never at any time subsequent to the location conveyed any interest therein to any other person than the plaintiff, except that on February 28, 1889, he conveyed an undivided one-fourth interest to defendant Tong; that, though it appeared of record in the office of the clerk of Silver Bow county that Upton was the owner of an undivided one-fourth interest, the said Tong, his grantee of a one-fourth interest, and the defendants Largey, Warren, Zenor and Bielenberg, as grantees of the interest of said Turner, had on January 1, 1892, applied to the land department of the United States for, and by fraudulent representations concerning their ownership, and concealment of the fact that Upton was still the owner of an interest therein, succeeded in procuring for themselves a patent for the entire claim, to the exclusion of said Upton, thus defrauding him of his rights; that on January 15, 1894, the said Upton had conveyed his remaining one-fourth interest to one H. L. Frank, who thereafter, and on March 21, 1894, had conveyed the same to plaintiff; that subsequent to the issuance of patent to them the defendants Largey, Warren, Zenor, Bielenberg and Tong had conveyed the claim to the defendant the Comanche Mining Company, and that the claim now stands upon the records of Silver Bow county in the name of said company; and that the other defendants have some claim or interest therein. In an amendment to this complaint it is alleged that on September 22, 1890, the defendants Largey, Warren, Zenor, Bielenberg and Tong organized the defendant the Comanche Mining Company; that they became the officers, trustees and stockholders thereof; that they knew that Upton was the owner of an undivided one-fourth interest in the claim; that the said company, through its said officers, knew actually

and constructively of Upton's interest; and that with such knowledge it purchased the claim from the said defendants.

The defendant the Comanche Mining Company made a separate defense. In its amended answer, after denying the allegations of fraud contained in the complaint, it interposed as affirmative defenses: (1) That the plaintiff has no interest in the Comanche claim, under the patent or otherwise, for the reason that in 1880, a short time after the location was made, and long prior to the issuance of the patent, Upton conveyed the interest now claimed by plaintiff to one John N. Collins, who on or about August 6, 1884, conveyed to the defendant Largey, and therefore that the grant to plaintiff through Frank conveyed no interest whatever. (2) That on or about August 6, 1884, Upton represented to Largey that Collins owned the interest in controversy; that he induced Largey to purchase the same, and take a deed therefor, with other property, from Collins, for a large sum of money, and that thereafter Largey, with Upton's knowledge, expended large sums of money in protecting the title to the claim and in developing it for mining purposes; and that by his conduct in this regard the said Upton had estopped himself and the plaintiff, his grantee, forever, from making a claim to the said interest. And (3) that the said Comanche claim was also known and designated by Upton as the "Grand Prize Lode Claim;" that on November 23, 1885, he had conveyed to Largey a one-half interest therein, to the defendant Zenor a one-fourth interest, and subsequently to the defendant Tong a one-fourth interest; and that by these conveyances the said Upton had parted with all interest he ever had in the ground covered by the Comanche claim, and therefore that the plaintiff acquired no interest by his conveyance from Upton through Frank. There are also other affirmative matters set forth in the answer, but it is not necessary to give them special notice.

The plaintiff, by replication, joined issues upon the first two defenses, and pleaded, in avoidance to the last, that the Grand Prize location was made by Upton in order to hold the ground

covered by the Comanche claim in case it should be adjudged
in an adverse suit then pending between the claimants under
that location and their adversaries, who claimed under another
location, known as the "Smelter Claim," that the Comanche
location was invalid, and that, the latter having been held to be
valid, the Grand Prize location had been abandoned by all par-
ties in interest, including the defendants, the grantors of the
Comanche Mining Company. A detailed statement of the
claims of the parties and the issues between them may be found
by reference to the opinion of this court in *Wetzstein* v. *Boston
& Montana Consol. C. & S. Mining Co.,* 26 Mont.193, 66 Pac.
943.

The foregoing summary is sufficient to make clear how the
questions to be decided herein arose. A trial in the district
court was had to a jury, which made special findings of fact,
and also returned a general verdict for the defendants. Upon
motion of the defendants, all the special findings, save one, were
adopted; and upon them, with others made by the court, a judg-
ment was rendered and entered in favor of the defendants. The
plaintiff has appealed from the judgment and an order denying
him a new trial.

The record in this case is voluminous. The assignments of
error are very numerous, and the briefs filed by counsel cover a
wide range of discussion. To discuss all the questions raised
and submitted would be a bootless task. We have examined
them all with that degree of care and patience which the inter-
ests at stake and the earnestness and ability displayed by coun-
sel in presenting them deserve. We have not been able, however,
to find that the plaintiff has suffered prejudice by any decision
or ruling made by the trial court during the progress of the
case.

1. It is argued by counsel for the plaintiff that the instruc-
tions submitted to the jury are conflicting, and that, taken to-
gether, they reveal the fact that the trial court entertained an
erroneous view of the principles of law applicable. The result
is, counsel say, that the rights of the parties have been adjudged
upon a wrong theory, and therefore that the plaintiff has suf-

fered prejudice. We shall not indulge in speculation as to what influence the instructions, if erroneous, exerted upon the minds of the jury. This is a suit in equity. The findings of the jury in such cases are advisory only. Ultimately the findings and the decree based thereon must be regarded as emanating from the judge, and the correctness of the result must be determined by a review of the action of the judge, without regard to the findings of the jury. This court has so held in many cases. (*Lawlor* v. *Kemper,* 20 Mont. 13, 49 Pac. 398; *Power* v. *Lenoir,* 22 Mont. 169, 56 Pac. 106, and cases cited.) Even if the contention of the plaintiff were maintainable in a suit in which it was made apparent that the findings of the jury were adopted and judgment entered thereon without careful consideration by the judge, it cannot be maintained in this case, for the reason that it appears that, after the findings were returned, the judge did not adopt them as a whole, without consideration, but set one of them aside, and made others after argument by counsel; thus indicating a careful examination of the evidence submitted, and the principles of law applicable. The findings are therefore, in fact, the findings of the judge. The submission of the case to the jury for a general verdict, if erroneous (and we do not decide that it was), was, in view of what has already been said, error without prejudice, because the court disregarded it entirely.

2. The contention is made that the evidence is insufficient to sustain the findings. Under the view we entertain of the case, it will not be necessary to examine the evidence further than so far as it is pertinent to the first defense alleged. As was said in considering the effect of the judgment herein in *Wetzstein* v. *B. & M. C. C. & S. Mining Co., supra,* if either one of the first two defenses shall be found to be sustained by the evidence, this will be conclusive of the rights of the parties without reference to the character and effect of the Grand Prize deed to Largey. If Upton conveyed the interest in controversy herein to Collins, who thereafter conveyed it to Largey, the defendant corporation, under the subsequent conveyances to it by Largey and his asso-

ciates, became vested with an indefeasible title.   There is no
controversy but that the corporation is the lawful owner of an
undivided three-fourths interest in the claim.   Its title to a half
interest came through Turner by conveyances executed by him
to Largey and Zenor.   The interests conveyed by Warren and
Bielenberg were obtained by mesne conveyances from Zenor.
The Tong interest is not questioned.   The other defendants,
except Mantle and the defendant corporation, were never vested
with any interest except such as they obtained as stockholders
in the corporation.   The only interest Mantle ever had was by
virtue of the deed from Collins to Largey purporting to convey
the disputed interest.   Mantle paid one-half of the purchase
price to Collins, but the title was taken by Largey, who there-
after held for himself and in trust for Mantle until the whole
property was conveyed to the corporation.   It is not controverted
that Collins made a conveyance to Largey in 1884.   The plain-
tiff bases his claim upon a quitclaim deed from Upton to Frank,
and a like conveyance from Frank to himself.   The controversy
upon this branch of the case then turns upon the question
whether Upton made the conveyance to Collins in 1880, and thus
devested himself of title, so that the plaintiff obtained no inter-
est through the conveyance from Upton to Frank.

The court found that this conveyance had been made, though
it appeared that it had been lost.   A summary of the evidence
tending to support this finding is the following:   Collins, who
now resides in Skowhegan, in the state of Maine, testified that
he was engaged in mining in Montana from 1867 to 1883; that
in November or December, 1880, he was in Butte, on the way
to visit his home in Maine; that he there met Upton, who pro-
posed to sell him an interest in certain mining property in
Butte, including a one-fourth interest in the Comanche claim;
and that after some conversation he took a deed, and paid Upton
$600 in cash.   He stated that he had searched among his papers
for the deed, but could not find it, and concluded that it had
been lost among his other deeds, all of which he had lost.   Lar-
gey testified that Upton came to him in the spring of 1884, and,
after telling him about the interests owned in various properties

by Collins,—the Comanche among them,—urged him to buy them; that he authorized Upton to open negotiations with Collins; that Upton did so, conducting them by letter; that this correspondence resulted in an agreement on the part of Largey to buy all the interests for $2,500, and the payment by Largey of Collins' share of the expenses of the litigation then in progress over the title to the claim; that thereupon Upton procured a deed from Collins, which purported to convey a one-fourth interest in the Comanche claim; that Collins placed the deed in a bank in Butte, to be delivered to Largey upon payment of the sum of $2,500; that this sum was paid by Largey and Mantle, and the deed put upon record; and that subsequently the share of Collins in the expenses of the litigation,—one-fourth,—amounting to several hundred dollars, was paid by Largey and Mantle. Part of the correspondence between Upton and Collins is found in the record. It shows clearly that the negotiations had reference to the Comanche claim. At the close of the transaction, Largey paid Upton $100 for his services in procuring the deed. There was evidence tending to show that Collins, by the assistance of Upton, represented the Comanche claim from 1880 to 1884; sometimes doing the work himself, and sometimes paying Upton for doing it for him. There was also evidence tending to show that though the litigation over the title began in 1882, and was very expensive, and continued on down to the beginning of 1892, Upton never paid any greater share of the necessary outlay than one-fourth, and, after he finally sold the other fourth interest to Tong, he did not assist in representing the claim, or pay any further attention to the litigation; the whole of the outlay thereafter being paid by Largey, Tong, Mantle, Warren, and Zenor, who were interested in the claim. Furthermore, it is not disputed that, after the relocation of the claim was made under the name of "Grand Prize," Upton conveyed to Largey and Zenor, his co-owners at that time, the same interests, relatively, which they owned in the Comanche claim, retaining a one-fourth interest only. When he came to execute a bond to Tong for a deed in the autumn of 1888, pursuant to the deed subsequently made on February 28, 1889,

he described his entire interest therein as an undivided one-fourth. So little attention did he give to the matter after the date of this deed to Tong in 1889, that, though the litigation over the title was pending in the supreme court of the United States, he did not, upon his own oath, know of the decision of that court in his own favor until more than two years after it was rendered.

These facts, with others which appear in the evidence, were amply sufficient to warrant the finding on this branch of the case. To be sure, there is a conflict in the evidence; but, the trial court having made the finding as it did, this court has no power to disturb it.

Nor do we find anything in the evidence to justify an inference that Largey and his associates fraudulently excluded Upton from the patent. It appears that in 1882 one James Larkin and others applied for a patent to the Smelter claim. This claim conflicted with the Comanche claim. Upton, Largey and Zenor (the first then owning a fourth interest in the latter claim) brought an adverse suit in the district court of Silver Bow (then Deer Lodge) county. Collins was not a party to this suit. The history of the subsequent litigation will be found in the case of *Upton* v. *Larkin,* 5 Mont. 600, 6 Pac. 66; *Id.,* 7 Mont. 449, 17 Pac. 728; and in *Larkin* v. *Upton,* 144 U. S. 24, 12 Sup. Ct. 614, 36 L. Ed. 330. In 1890, and during the pendency of this suit in the supreme court of the United States, the defendants Largey, Warren, Tong, Zenor and Bielenberg instituted proceedings for a patent. They obtained from the clerks of the district and supreme courts of Montana certificates that no suits were pending in these courts involving the title. They furnished these to the land office at Helena, with abstract of title, which showed an interest in themselves and Upton, and were allowed to make entry. Subsequently, upon application of Larkin and the other defendants in the adverse proceedings, this entry was held for cancellation. Thereupon the applicants for the Comanche patent appealed to the department at Washington. This appeal was pending when the final judgment was rendered in *Upton* v. *Larkin,* 144 U. S. 24, 12 Sup. Ct. 614,

36 L. Ed. 330. The applicants for the Comanche patent then presented a certified copy of the final judgment to the department in Washington, and obtained their patent. It does not appear from the record in this case how Upton's name came to be omitted from the patent. Such, however, was the fact. What evidence of title in the applicants was presented with the judgment, other than the abstract which was used upon the original entry, does not appear. The presumption must be indulged either that sufficient other evidence was presented to warrant the omission of Upton's name, or that the officers of the department omitted his name by mistake. But conceding either presumption to be correct, no harm was done to Upton, in view of the fact that he had theretofore parted with all interest in the claim. Whether the proceeding was fraudulent upon the original entry, or irregular upon final application to the department at Washington, was a question of no concern to him.

But counsel insist that the plaintiff purchased without notice of the claim on the part of the corporation, for a valuable consideration, and therefore, as against this defendant, which purchased with notice, his title is superior; it appearing that Upton's deed to Collins was never put upon record. This position is untenable, for two reasons: In the first place, the evidence shows clearly that both Frank and Wetzstein prior to and at the dates of their respective conveyances had full notice that the corporation was in possession of the claim under its grant from the patentees, and asserting title under the Collins deed. In the second place, their conveyances are both mere quitclaim deeds, and purport to convey only such rights as their respective grantors had at the time they executed them. Under such a deed the grantee takes such title only as the grantor has. (*McAdow* v. *Black,* 6 Mont. 601, 13 Pac. 377; *Butte Hardware Co.* v. *Frank,* 25 Mont. 344, 65 Pac. 1; Devlin on Deeds, Sec. 671.) The plaintiff therefore stands upon no higher ground than would Upton himself, were he demanding the relief now sought by the plaintiff, his mesne grantee.

The findings of the trial court upon this branch of the case, express and implied, are consistent, are amply sustained by the

evidence, and are sufficient to support the judgment. It is not necessary, therefore, to investigate the question whether the findings on the other two branches of the case are conflicting or defective, or are insufficient.

3. There are many assignments of error upon the admission and exclusion of evidence. We shall notice only one of them. It is said that all the evidence touching the Grand Prize location, and the conveyances of the interests therein by Upton, should have been excluded as incompetent and immaterial,— Upton having testified that this location was made merely for the purpose of protecting the interests of himself, Largey and Zenor,—and that after the final decision of the supreme court of the territory in *Upton v. Larkin,* 7 Mont. 449, 17 Pac. 728, confirming their title under the Comanche location, the Grand Prize was abandoned. Without pausing to consider the effect of the deeds made by Upton, this evidence was clearly competent and material, as tending to establish the disputed conveyance to Collins. Upton, according to his own testimony, had located the Grand Prize claim in order to protect his and his co-owners' interests. The deeds to Largey and Zenor he executed and delivered to them without demand. Upon the theory that he had conveyed to Collins in 1880, these deeds conveyed away just such interests as should have been conveyed, and left him with all that he was entitled to retain. It was thought at that time that they had some value as evidence of title, for the location was made under the advice of counsel employed in the case of *Upton v. Larkin* to forestall a possible judgment declaring the invalidity of both the Comanche and Smelter locations. In the light of the other facts showing Upton's behavior prior to and after the date of the last deed to Collins, this evidence cannot be explained upon any other theory than that he had executed and delivered that deed, unless it be upon the theory of a mistake, which was not an issue in the case.

The judgment and order denying a new trial are each affirmed at the cost of the appellant.

*Affirmed.*