### UNITED STATES v. FOSTER et al.

(District Court, D. Massachusetts. October 2, 1913.)

No. 641.

1. Post Office (§ 4*)—Postmasters—Salary—Statutory Provisions.

Under Act July 12, 1876, c. 179, § 5, 19 Stat. 80 (U. S. Comp. St. 1901, p. 2609), dividing postmasters into four classes, and defining the second class as including all those whose annual salaries are between $2,000 and $3,000, and Act March 3, 1883, c. 142, 22 Stat. 600 (U. S. Comp. St. 1901, p. 2619), providing that the respective compensation of postmasters of the first, second, and third classes shall be annual salaries assigned in even hundreds of dollars, to be ascertained and fixed from their respective-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

quarterly returns to the auditor at the rates therein specified, which are based on the gross receipts, and Rev. St. § 161 (U. S. Comp. St. 1901, p. 80), authorizing the Postmaster General to prescribe regulations not inconsistent with law for the governing of his department, the conduct of its officers and clerks, and the distribution and performance of its business, the Postmaster General had no authority to make a regulation that, in determining the gross receipts for the purpose of fixing a postmaster's salary, unusual sales of stamps should not be included, and that a statement of such sales should not be made to the auditor, but to the First Assistant Postmaster General, since the regulation is not an attempt to define "gross receipts" nor to clear up an ambiguity in the statute or supply details, but in effect makes salaries dependent, not upon gross receipts returned to the auditor as provided by statute, but upon such part of such gross receipts as, in the opinion of some departmental official, is not unusual, or for use outside the district.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 3; Dec. Dig. § 4.*]

2. POST OFFICE (§ 4*)—POSTMASTER GENERAL—REGULATIONS—VALIDITY.

That the validity of a regulation by the Postmaster General was unquestioned for a long time was of little force in determining its validity, where the only persons directly affected thereby were subordinate office holders, who would be very reluctant to attack the validity of a regulation made by their superior officer.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 3; Dec. Dig. § 4.*]

3. CONSPIRACY (§ 33*)—OFFENSES—CONSPIRACY TO DEFRAUD GOVERNMENT.

A conspiracy to secure for a postmaster a larger salary by purchasing at his office large quantities of postage stamps for use outside the territory served by such office was not a conspiracy to defraud the United States, since, as the statute makes the postmaster's salary dependent on the gross receipts, without excluding receipts from such sales, the postmaster was legally entitled to the salary which it was the object of the alleged conspiracy to secure, and a conspiracy to obtain by improper methods, what one is legally entitled to is not punishable as a conspiracy to defraud.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33.*]

4. INDICTMENT AND INFORMATION (§ 147*)—DEMURRER—GROUNDS.

Where an indictment charged a conspiracy by a postmaster and others, the object of which was that the postmaster should make false returns to the First Assistant Postmaster General for the purpose of fraudulently increasing his salary by failing to report, in the gross receipts required to be made monthly, large and irregular sales of postage stamps for use outside the district served by such post office, the fact that no such report of gross receipts as was described in the indictment was required of the postmaster did not render the indictment demurrable, since its allegations on demurrer would be taken as true.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 490–494; Dec. Dig. § 147.*]

5. POST OFFICE (§ 36*)—OFFENSES—MAKING FALSE RETURN.

The making of a false return by a postmaster by failing to report large and irregular sales of postage stamps for use outside the district served by his office, the receipts from which, under departmental regulations, would be excluded in fixing his salary if so reported, was not punishable under Cr. Code, § 206 (Act March 4, 1909, c. 321, 35 Stat. 1128 [U. S. Comp. St. Supp. 1911, p. 1649]), providing that any postmaster or other person employed in the postal service, making or assisting in making a false return for the purpose of fraudulently increasing his compensation,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

shall be punished as therein provided, since, as under the statute such receipts should not be excluded, the purpose of the false return was to secure for the postmaster only what he was legally entitled to receive; and hence a conspiracy, the object of which was the making of such false return, was not punishable as a conspiracy to defraud the United States government.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 56; Dec. Dig. § 36.*]

Harold A. Foster and others were indicted for conspiring to defraud the United States. On demurrer to the indictment. Demurrer sustained.

William H. Garland, Asst. U. S. Atty., of Boston, Mass.

Timothy Howard, of Worcester, Mass., and Philip Rubenstein and David A. Ellis, both of Boston, Mass., for defendants.

MORTON, District Judge. The first count of this indictment charges the defendants with having conspired to defraud the United States. The alleged object of the conspiracy was to obtain for the defendant Foster a larger salary as postmaster at North Brookfield than he was, by law and by the regulations of the Post Office Department, entitled to. This object was to be accomplished, according to the allegations of the indictment, in the following manner: One of the other defendants, Winchell, was to buy at the North Brookfield post office large quantities of stamps, which he was to send to the other two defendants, Edwards and Platt, at New York City, for use there. Foster was to include the proceeds of these sales in his returns of the gross receipts of the North Brookfield post office to the auditor for the Post Office Department, but was not to report the sales to the First Assistant Postmaster General as unusual ones, to the end that the receipts from such sales should be deemed to be part of the gross receipts of said post office, and consequently should be made in part the basis upon which Foster's salary was determined. It is alleged that the regulations of the department required large or unusual sales for use outside the district to be reported by the postmaster to the First Assistant Postmaster General, and further provided that such sales should not be included by the officials of the Post Office Department in the "gross receipts" upon which the postmaster's salary was fixed.

The defendants have demurred to this count on several formal or technical grounds, none of which seems to me to be well taken. The principal contentions of the defendants are that by statute Foster was entitled to a salary based upon "gross receipts"; that "gross receipts" included all sales, usual or unusual; that the regulations of the Postmaster General requiring unusual sales to be deducted from gross receipts for the purpose of fixing the postmaster's salary were contrary to the statute, and were invalid; that the effect of the alleged conspiracy, if successful, would be to procure for Foster only what he was legally entitled to, and not to defraud the United States.

[1] By the provisions of section 5 of the Act of July 12, 1876 (19

Stat. 80, c. 179 [2 U. S. Comp. Stat. 1901, p. 2609]), postmasters are divided into four classes. The second class is defined as including all those whose annual salaries are between $2,000 and $3,000. The salaries of the second class postmasters are fixed by the Act of March 3, 1883 (22 Stat. 600, c. 142 [2 U. S. Comp. Stat. 1901, p. 2619]), which is entitled "An act to adjust the salaries of postmasters," and provides, in substance, "that the respective compensation of postmasters of the second class shall be annual salaries assigned in even hundreds of dollars to be ascertained and fixed by the Postmaster General from their respective quarterly returns to the auditor * * * at the following rates, namely: Second class, gross receipts $8,000, and not exceeding $9,000, salary $2,000." The Postmaster General, as the head of a department, "is authorized to prescribe regulations, not inconsistent with law, for the governing of his department, the conduct of its officers and clerks, the distribution and performance of its business," etc. R. S. § 161 (U. S. Comp. St. 1901, p. 80). Under this last statute the Postmaster General made a regulation to the effect that in determining the gross receipts of a post office for the purpose of fixing the postmaster's salary, unusual sales of stamps should not be included, and that a statement of all such sales should be made monthly, not to the auditor (to whom gross receipts are reported), but to the First Assistant Postmaster General.

The crucial question upon the first count of the indictment is whether this regulation is valid. Congress itself has, by statute, undertaken to establish the salaries of second class postmasters. It has done so by reference to the "gross receipts" of their respective post offices, a definite and unambiguous expression. Such receipts are reported to the auditor every quarter, and the act explicitly makes these returns the basis for fixing salaries. Other statutes forbid postmasters from selling stamps or stamped paper at other than the regular prices, from soliciting business for their own offices, from selling outside their own districts, etc. Crim. Code, § 208 (Act March 4, 1909, c. 321, 35 Stat. 1128 [U. S. Comp. St. Supp. 1911, p. 1650]). The effect of the various statutes taken together is to make the salaries depend upon the gross receipts, and to prevent such receipts (and consequent salaries) from being increased by improper methods. The entire matter appears to be adequately covered by the statutes.

"The whole theory of the act of 1883 is that every postmaster shall receive a salary dependent upon and regulated by the amount of business done at his office. The intent of the statute in this respect appears so plain upon a careful reading of it that it is difficult to elucidate it by argument or illustration." Lamar, J., United States v. Wilson, 144 U. S. 24, 28, 12 Sup. Ct. 539, 541 (36 L. Ed. 332).

The regulation in question is not an attempt to define "gross receipts" (e. g., to say whether money order fees should be included therein), nor to clear up an ambiguity in the statute, nor to supply details lacking in the statute. The proceeds of the sales of stamps contemplated by the alleged conspiracy became part of the gross receipts of the North Brookfield office, and were to be so reported. The

effect of the regulation is to divide gross receipts into two parts, only one of which shall be considered in fixing salaries. The regulation assumes that some person in the department has the power to determine what sales shall be included in the "gross receipts" on which a salary is based. The effect of the regulation is therefore to make salaries dependent, not upon gross receipts returned to the auditor, as provided in the statute, but upon such part thereof as, in the opinion of somebody connected with the Post Office Department, is not unusual, nor for use outside the district.

An administrative officer has no right to substitute by regulation a different—even though it be a better—basis for fixing salaries than that explicitly provided by Congress. Regulations are valid only so far as they accord with, and carry out, and are not inconsistent with Acts of Congress dealing with the same questions. United States v. George, 228 U. S. 14, 33 Sup. Ct. 412, 57 L. Ed. 712; Morrill v. Jones, 106 U. S. 466, 1 Sup. Ct. 423, 27 L. Ed. 267; United States v. Eaton, 144 U. S. 687, 12 Sup. Ct. 764, 36 L. Ed. 591. The function of a regulation is to make a tight joint between the law and the subject-matter to which the law applies.

The regulation in question does not complete and carry out the plan of compensation provided in the statute—no regulation was necessary for that purpose—it ignores the returns of gross receipts to the auditor which the statute explicitly makes the basis for adjusting salaries, and it sets up instead a substantially different plan under which salaries are based, not upon gross receipts returned to the auditor, but upon "ordinary" or "usual" gross receipts as determined by the department.

[2] It seems to me that the regulation is inconsistent with the statute, and consequently invalid. I do not overlook the length of time during which the regulation has been in force without question, but the only persons directly affected by it were subordinate office holders, who would be very reluctant to attack the validity of a regulation made by their superior officer. Acquiescence under such circumstances amounts to very little.

[3] The object of the conspiracy, as alleged in the first count of the indictment, was to defraud the United States by securing for Foster a larger salary than he was entitled to under said regulation.

"The offense here charged is predicated both upon the violation of the law and of the regulations made by the Postmaster General in pursuance of them." Brief of United States Attorney.

If the regulation was invalid, Foster was legally entitled to the salary which it was the object of the alleged conspiracy to secure for him. A conspiracy to obtain by improper methods what one is legally entitled to is not punishable as a conspiracy to defraud. United States v. Biggs, 211 U. S. 507, 29 Sup. Ct. 181, 53 L. Ed. 305; Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278. In Curley v. United States, 130 Fed. 1, 64 C. C. A. 369, relied on by the United States, the object of the conspiracy was to secure for Hughes a salaried position under the civil service to which he was not legally entitled. The court said (130 Fed. 11, 64 C. C. A. 379):

"The regulations and the requirements (which were subverted) * * * were founded upon law, and were such as the government had the right to enforce."

The decision seems to me in no way inconsistent with the views above expressed. The demurrer to the first count must therefore be sustained.

The second count charges a conspiracy between the same defendants to commit "the offense denounced by section 206 of the Criminal Code." That section provides, inter alia, that whoever, being a postmaster, shall, for the purpose of fraudulently increasing his compensation, make a false return, statement, or account, to any officer of the United States, shall be punished.

[4] Objection is made by the defendants to the certainty and formal sufficiency of this count, but in my opinion it properly charges a conspiracy by the defendants, the object of which was that Foster should make false returns to the First Assistant Postmaster General for the purpose of fraudulently increasing Foster's salary as postmaster, by knowingly and fraudulently failing to report to him, in the report of gross receipts required to be made monthly to the First Assistant Postmaster General, large and irregular sales of postage stamps to be made by Foster to the defendant Winchell for use in New York City outside the North Brookfield district.

It is said for the defendants that no such report of gross receipts as is described in the indictment was in fact required of Foster; that, under the law and the regulations of the department, gross receipts were reported quarterly to the auditor, and unusual sales were reported quarterly in a letter to the First Assistant Postmaster General. But such regulations and reports are matters of fact; the allegations in the indictment are explicit, and on demurrer must be taken as true. The question whether the failure to report to the First Assistant Posmaster General unusual sales falsified the report to the auditor also involves questions of fact which cannot be determined on demurrer.

[5] The crime denounced by section 206 of the Criminal Code includes two essential elements: (1) That a return shall be made which was known to be false; and (2) that such false return shall have been made "for the purpose of fraudulently increasing compensation." It is not criminal under said section to make a false return except for the purpose therein stated. From the allegations of the second count of the indictment it clearly appears that the purpose of the alleged false return was to secure for Foster only what he was, in accordance with the views hereinbefore expressed, legally entitled to receive. The making of a false return for such a purpose was not a crime under said section; and the alleged conspiracy to do so was not a conspiracy to commit the offense denounced thereby.

Demurrer sustained as to both counts of the indictment.