# LARKIN *v.* UPTON.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF MONTANA.

No. 175.   Argued March 1, 1892. — Decided March 14, 1892.

Where special findings are irreconcilable with a general verdict, the former control the latter.

If the findings are fairly susceptible of two constructions, the one upholding and the other overthrowing the general verdict, the former will be accepted as the true construction.

The top or apex of a vein must be within the boundaries of the claim, in order to enable the locator to perfect his location and obtain title; but

this apex is not necessarily a point, but often a line of great length, and if a portion of it is found within the limits of a claim, that is sufficient discovery to entitle the locator to obtain title.

PRIOR to March, 1882, plaintiffs in error, defendants below, filed their application in the United States land office at Helena, Montana, for a patent to the Smelter lode claim. Defendants in error, plaintiffs below, "adversed," claiming as owners of a conflicting location, called the Comanche lode claim, and thereafter commenced this action in the District Court of the Second Judicial District of the Territory of Montana to determine the right of possession to the disputed territory, an area, as alleged, of seven and seventy-nine one-hundredths acres. There were two trials in the District Court, in each of which the verdict and judgment were in favor of the plaintiffs. The first judgment was reversed by the Supreme Court of the Territory, and a new trial ordered. 5 Montana, 600. The second judgment was affirmed by that court, 7 Montana, 449, which judgment of affirmance was brought to this court by writ of error.

*Mr. W. M. Stewart* (with whom was *Mr. M. Kirkpatrick* on the brief) for plaintiffs in error.

*Mr. S. S. Burdett* and *Mr. W. W. Dixon* (with whom was *Mr. M. F. Morris* on the brief) for defendants in error.

MR. JUSTICE BREWER delivered the opinion of the court.

The first judgment was reversed by the Supreme Court of the Territory, on the ground that there had been no discovery of a vein or lode within the Comanche territory at the time of the location of that claim. Immediately north of the Comanche was the Shannon claim, which at the time of the commencement of this suit had been surveyed and patented; and it appears from the opinion of the Supreme Court, that at the first trial the testimony showed that the discovery shaft of the Comanche was wholly within the limits and boundaries of the Shannon claim. The contest at the second trial was as to the position of that discovery shaft and of the apex of

the vein disclosed by it. Unquestionably if not on the boundary line between the Comanche and Shannon claims, the shaft was very close to it. The testimony of the defendants tended to show that it was wholly on the Shannon claim; that of the plaintiffs, that it was partly on both claims, extending some 19 inches in width into the Comanche claim, and that the apex of the vein was within the limits of these 19 inches.

The jury returned a general verdict for the plaintiffs, and also made certain findings of fact at the instance of the respective parties. It is doubtless true that where special findings are irreconcilable with a general verdict, the former control the latter; and upon this rule plaintiffs in error rely for a reversal. It is also true that if the findings are fairly susceptible of two constructions, one upholding and the other overthrowing the general verdict, the former will be accepted as the true construction, because it will not be presumed that the jury had different intentions in the findings and in the verdict. *St. Louis & San Francisco Railway Co.* v. *Ritz*, 33 Kansas, 404. So that if the meaning of these findings be doubtful, we should adopt that which conforms to and upholds the verdict.

It is unquestioned law that the top or apex of a vein must be within the boundaries of the claim in order to enable the locator to perfect his location and obtain title. Turning to the findings, these three are all that are pertinent to this question — two in response to interrogatories submitted by the plaintiffs, and the other to one submitted by the defendants:

"1st. Did the locators of the Comanche lode claim, prior to the location of said claim, discover in the shaft claimed by them as discovery shaft a vein or crevice of quartz or ore, with at least one well-defined wall on a lode or vein of rock in place bearing gold, silver or other valuable mineral deposits?

"Answer. Yes.

"2d. If your answer to the foregoing interrogatory be 'yes,' then answer: Was any part of such vein or lode discovered by the locators of said Comanche claim at the point of discovery, south of the south boundary line of the Shannon lode claim as patented and within the limits of the said Comanche lode claim as located?

" Answer. Yes."

" 1st. If the jury find that the locators of the Comanche lode claim discovered a vein in the hole or shaft claimed as the Comanche discovery, then the jury will answer: Was the top or apex of such vein within the limits of the Shannon claim as patented ?

·" Answer. No."

We fail to see any conflict between these findings and the general verdict. They show that within the discovery shaft a vein was disclosed, and that the top or apex of such vein was not within the limits of the Shannon claim. It follows, of course, that it must have been within the Comanche claim, and that was sufficient to sustain the location. It is said that the second finding, which is to the effect that a part of such vein or lode was south of the boundary line and within the limits of the Comanche claim, carries with it the implication that part was north of that boundary and within the Shannon claim; that as the testimony shows that the general direction of the dip was southward, and only a part of the vein or lode was within the Comanche claim, the apex of this vein was necessarily within the Shannon claim. But it is distinctly found that the top or apex was not within the limits of the Shannon claim; and because the jury responded "yes" to a question as to whether a part of this vein was within the Comanche claim, it does not follow that they would have responded " no " if the question had been whether all of the vein was within the Comanche territory. Doubtless the form of this question was adopted by counsel for plaintiffs in view of the conflict as to the boundary line; but it is not fair to infer from the mere form that the jury meant to find, or would have found, if the distinct inquiry had been presented to them, that any portion of the vein was within the Shannon territory. It would be a strained inference from the facts as found, that any portion of the vein, from its apex downward, at least so far as disclosed in the discovery shaft, was north of the boundary line within the limits of the Shannon claim. There is, therefore, no conflict between the findings and the verdict, and there was ample testimony to sustain both.

Counsel for plaintiffs in error insists that under the instructions the jury might have found for the plaintiffs, if any portion of the apex was within the Comanche territory, and in support thereof refers to this instruction :

" 8. (Given.) The apex of a vein or lode is the highest point thereof, and may be at the· surface of the ground or at any point below the surface. When the vein or lode does not crop out, but is what is called a blind vein or lode, the apex thereof would necessarily be below the surface of the ground ; and in this case you are instructed that if the locators of the Comanche lode vein, at the time of the location thereof, found, or if, from the work done by others prior thereto, they could see, at any point within the limits of said location, a lode or vein the top or apex of which was within the said lines of their location, then, in such case, they made a discovery of a lode or vein such as the law requires to be made to entitle them to locate the ground, and it is wholly immaterial as to the amount or quantity of such vein or lode which may have been found within the limits of their said location ; any amount of it would suffice, however small, either as to the amount of the vein or its apex within the limits of the said location."

While the giving of this instruction was at the trial excepted to, error has not been here assigned thereon, and with one construction, at least, of its language it is undoubtedly correct. The apex of a vein is not necessarily a point, but often a line of great length. Any portion of the apex on the course or strike of the vein found within the limits of a claim is sufficient discovery to entitle the locator to obtain title ; for while the owner of a vein may follow it in its descent into another's territory beyond his own side lines, he cannot beyond his end lines, and the vein beyond those end lines is subject to further discovery and appropriation. That such was the understanding by the jury of the instruction and such the fact in this case is evident from the findings. Indeed, it would seem from some of the testimony that the course or strike of this vein was not exactly along the · boundary line between the Comanche and the Shannon, but varying somewhat therefrom ; hence the apex, in its full width and with some portions of its

length, might be found in each claim, and so discovered justify the discoverer in obtaining title to each.

We see no error in the proceedings, and the judgment will be

*Affirmed.*