## CRAMER v. MUNKRES, ET AL.

BILLS AND NOTES—ORDER UPON SPECIAL FUND—PRINCIPAL AND SURETY—FINDINGS—PARTIES.

1. Defendant was sued upon an order drawn upon him in favor of the plaintiffs, payable out of certain funds to come into his hands as the profits of the drawer in a certain contract assigned by the latter to the defendant, after the payment of certain previous orders, and the then indebtedness of the drawer to the defendant, one item of which indebtedness was a sum previously paid by defendant as co-surety with another upon a debt of the drawer. After the order sued upon had been given and accepted, defendant was required by judgment to pay to his former co-surety one-half the amount so collected upon that item of indebtedness. *Held,* the amount so paid by defendant to his former co-surety was not again chargeable against the fund of the drawer in his hands as against the plaintiffs and the order sued on.

2. A special finding will control as against a general finding when they are in conflict, but when there is a conflict between two special findings, one of which supports, and the other conflicts with, the general finding and judgment, the one that supports the judgment must control.

3. Where defendant had taken an assignment of a contract for the care of cattle on shares, as security for money ad-

vanced by him and other items of indebtedness due him, and in a suit upon an order of the assignor payable out of the funds in defendant's hands arising out of the contract, the court found that defendant had earned $500 in caring for the cattle, but, without allowing him that sum as against the order sued on, found the balance in his hands payable upon the order in suit; *Held,* that the findings were not in conflict, but were to be construed as finding that though defendant had earned $500, he had waived the right thereto as against the plaintiffs and the order sued on by his conduct and admissions; and that there was evidence sufficient to support such finding as to waiver, it appearing that he had denied any claim for services before the order in suit was given and accepted, and in a statement of his account with the assignor, who was primary owner of the fund and the drawer of the order in suit, no mention was made of a claim on his part for compensation for services.

4. In a suit upon an order against a fund in defendant's hands payable after the payment of previous orders to third parties, the latter were not necessary parties since they had been paid, and, therefore, had no interest in the fund in controversy.

5. The drawer of the order was made a nominal party, but was not served with summons and did not appear, except to be present as a witness at the trial. *Held,* that, without deciding whether he was a proper party or not, since no objection was made to proceeding without bringing him in, it was too late after judgment for defendant to raise the question, especially as it appeared that the drawer's interest in the fund was known to all the parties before the trial.

[Decided December 16, 1905.]                (83 Pac. 374.)

ERROR to the District Court, Sheridan County; HON. JOSEPH L. STOTTS, Judge.

The material facts are stated in the opinion.

*E. E. Enterline* and *Alvin Bennett,* for plaintiff in error.

The drawer of the order in suit, as well as the parties to the original contract with him were necessary parties, and in their absence no judgment could properly be rendered. No action can be maintained by an assignee of a part of a

fund, as it is contemplated that settlement be made with all the parties. (Price v. Elmock, 72 Fed., 610; 17 Ency. L., 536.) The fact that plaintiff claimed compensation for his services rendered it imperative that Holland, the drawer, be brought in as a party. A conditional promise to pay the debt of another is within the statute of frauds. (Clapp v. Webb, 52 Wis., 638; Barry v. Law, 89 Fed., 582.) It was incumbent upon the plaintiffs below to prove that there was a surplus in the fund applicable to the payment of the order in suit; and it was improper to make such proof by declarations of the defendant made before the order was given. Conversations prior to that time with defendant were improperly admitted in evidence. The findings are not supported by the evidence. There was no acceptance of the order on the part of defendant. (Thompson v. Wheatland Merc. Co., 10 Wyo., 86.)

The record in this case shows that Cramer acted in good faith in carrying out his various agreements with Holland. It also shows that he faithfully accounted for every cent that he collected and paid out. After he had advanced a great deal of money and given his time and attention in carrying out Holland's agreement with the Cattle Company, he was compelled to pay over to Redman the sum of $1,300.00, when as a matter of fact Holland is indebted to him in a much greater sum. In other words it is sought in this action and was so decided by the court that Cramer had to pay Holland's debts. This is certainly a novel method of settling accounts, and there is no certainty now but that Cramer will be subjected to another action brought by Holland for an accounting between them. This shows the great hardship that has been imposed upon Cramer, and the reasons are numerous why the judgment ought to be reversed.

*W. S. Metz,* for defendants in error, Munkres and Mather.

The drawer of the order in suit was made a party, and he filed an answer in the court where the action was originally brought. If the motion was not transmitted to Sheridan County, where the cause was taken for trial, the record

is incomplete. All the parties to the original contract were also made parties, and the others interested in the fund; but as the latter had all been paid, it is clear that they were not necessary parties. The conversations with Cramer were all admissible, as they had reference to the fund in question, the amount thereof, and the prior claims upon the same. (Mitts v. McMoran, 31 N. W., 522; Hughes v. Fisher, 15 Pac., 702; Putney v. Farnam, 27 Wis., 189.) The contract to pay the order in question was not within the statute of frauds. (Welsh v. Kinney, 49 Cal., 49; Crosby v. Gewlmen, 37 Ind., 264; Crum v. Fitch, 53 Ind., 214; Rundy v. Rundy, 59 Ill., 98; Balliet v. Scott, 32 Wis., 174; Walton v. Manderville, 9 N. W., 913; Demalt v. Hardsell, 4 Pac., 1201; Wendell v. Hudson, 2. N. E., 303.)

One of the agreements of Cramer to pay the order in question was made at the time that Munkres & Mather agreed to receive the same, and to release Holland. This all took place at the same time and formed one agreement, and in that case it will be binding upon Cramer whether he had funds or not, and it would not be a collateral promise. It will also be observed that Cramer, in paying Munkres & Mather, would also be paying his own debt, not only on the promise he made to them, but in satisfying his obligation to Holland as well, and it ought to be a matter of indifference to him whether he pays directly to Holland or to Holland's assignee, for he would be compelled to pay the same sum that he would be complled to pay to Holland, and is only required to pay it once. Holland had already deposited this property and funds in Cramer's hands and he directed Cramer to pay out of this fund his, Holland's, debt, and Cramer thereupon promised to pay it to plaintiffs. All the authorities are to the effect that when one receives property or money or funds out of which he promises to pay a sum to another, the creditor of the depositor, the one to whom said payment is to be made may maintain an action thereon in his own name. This cannot injure the promisor. (Dearborn v. Parks, 17 Am. Dec., 208; Putney v. Farnam, *supra;* Dyer v. Gibson, 16

Wis., 566; Wyman v. Goodrich, 26 Wis., 21; McClellan v. Sanford, *id.*, 595; McDaniels v. Maxwell, 21 Ore., 202; Pomeroy Eq. Jur., Sec. 1280; Brill v. Tuttle, 81 N. Y., 454; Bank v. Kimberlands, 16 W. Va., 555; Hutchinson v. Simon, 57 Miss., 628; Moore v. Lowery, 25 Ia., 336.) The agreement between the parties operated as an equitable assignment of the fund to plaintiffs. (Hall v. Flanders, 83 Me., 242; Phillips v. Edsall, 27 Ill., 535; Harlow v. Bayonne, 48 N. J. Eq., 246; Field v. Mayor, 6 N. Y., 179; Hall v. Buffalo, 1 Keys, 193; Jones v. Ferrill, 1 De Gex & J., 208; Brill v. Tuttle, 81 N. Y., 454; Harlow v. Bartlett, 96 Me., 294.) Parol evidence is admissible to show the purpose for which an instrument was executed. (21 Ency. L. (2nd Ed.), 1111.) Where a person having money belonging to another agrees with him to pay it to a third party, the latter may sue, and also where a party has money belonging to another in equity and good conscience the latter may sue. (Hines v. Holdship, 26 Am. Dec., 107; Brill v. Tuttle, *supra;* Leech v. Hill, 106 Ia., 171; Winburn v. Loan Ass'n, 110 Ia., 374; Mitts v. McMoran, 64 Mich., 664; Quinn v. Hanford, 1 Hill (N. Y.), 82; Durker v. Conklin, 13 Colo. App., 313; Hughes v. Fischer, 10 Colo., 383; Elmar v. Bank, 72 Fed., 610; Stevens v. Kyle, 57 Am. St., 854; Herter v. Goss., 57 N. J. L., 42; Arnold v. Lyman, 17 Mass., 400; Hall v. Marshalton, 17 Mass., 575; 2 Greenl., Sec. 109; Weston v. Barker, 12 Johns, 276; 1 Gray, 322; Bank v. Rice, 107 Mass., 37; McPherson v. Walton, 42 N. J. Eq., 282; Short v. Blount, 99 N. C., 49.)

Cramer's admissions at various times show that he had a surplus of funds with which to pay the plaintiffs upon the order given them. His admissions also dispute his claim for compensation for personal services.

We do not perceive upon what possible ground counsel for the plaintiff in error can insist that the costs, expenses and judgment in what is called the Redman suit, that was brought upon an agreement between Redman and Cramer individually, in which no one else took part or was interested,

and which judgment, expenses and attorney fees all occurred at least two or three years subsequent to the giving and acceptance of the order in question, should be charged to the fund against which the order in question was drawn.   If the fund could be charged with these expenses that occurred years afterwards, then no assignment of the fund in defendant's hands could be made; no order could be given against it, that would be of any value whatever, or have any binding force, and we think that the court below rightfully excluded all consideration of the Redman matter; and we fail to perceive where there is any principle of law or equity that would warrant the court in making any allowance for these attorney fees, costs, charges and judgment.

*E. E. Enterline* and *Alvin Bennett,* for plaintiff in error, in reply.

Counsel for defendants in error states that Cramer had agreed to pay the order in question, and that Munkres and Mather had agreed to receive the same and to release Holland.   And it is contended that Cramer's promise became an original promise, and became binding upon Cramer whether he had any funds or not.   In answer to this we insist that there is no testimony in the record supporting such contention.   That testimony was excluded upon our objection.   No recovery can be had in this case under the testimony, or rather upon the facts, unless it appears that Cramer has funds in his hands belonging to Holland, after paying all lawful claims due himself.   The case of Thompson v. Wheatland Mercantile Co., cited in our former brief is decisive of the questions involved in this case as to Cramer's liability.

Cases are cited and discussed by counsel in support of the principle that where a person has money belonging to another and agrees with him to pay it to a third person the latter may always sue the former.   That principle is elementary and we do not dispute the doctrine contended for.   No authority, however, can be found which would compel a person to pay another under the circumstances as disclosed by this case.   Cramer was to pay in the event that he had money in

his hands, after paying several other claims, and all the indebtedness due him. As Holland owes him over $1, 000.00, it is apparent that he has no money in his hands out of which to pay any of Holland's indebtedness.

BEARD, JUSTICE.

The defendants in error, Munkres & Mather, commenced this action in the District Court of Johnson County, October 11, 1900, against the plaintiff in error, Newton E. Cramer, to recover one thousand dollars alleged to be due them from Cramer upon a certain written order. The case was transferred to Sheridan County and was tried to the court without a jury, judgment was rendered in favor of Munkres & Mather and against Cramer for $800.00 with interest and costs. A motion for a new trial was denied, exceptions taken and Cramer brings error.

The circumstances out of which the suit arose are substantially as follows: March 10, 1897, one W. H. Holland entered into a written contract with certain parties known as the Gibson Cattle Co., by the terms of which contract the Cattle Co. was to furnish money to buy cattle and Holland was to buy, run and care for the cattle in Johnson County. The cattle were to be the property of the Cattle Co., and when ready for market were to be shipped by Holland in the name of the Cattle Co. Holland was to bear the expense of caring for, feeding and gathering the cattle; the freight, and commissions for selling the cattle, to be borne jointly by the parties and when the cattle were marketed the Cattle Co. was to retain all money received from sales until the whole amount of the purchase money should be paid, and the residue of the profits was then to be equally divided between Holland and the company. In pursuance of this contract the company furnished the money and Holland bought cattle, which were ranged, fed and cared for in Johnson County. On October 26, 1897, Holland gave an order on the Cattle Co. to the first National Bank of Buffalo, Wyoming, for $1,000, and on January 3, 1898, he gave an-

other order on the company to said bank for $1,000, both to
be paid out of his share of the profits of said cattle business.
On March 7, 1898, Holland, being indebted to Cramer and
in need of money to carry out his contract with the Cattle
Co., entered into a written contract with Cramer, by the
terms of which Cramer agreed to advance from time to
time such sums of money as Holland should need to run
and care for said cattle, not to exceed the sum of $1,000, and
Holland assigned to Cramer all of his share of any profits
that should accrue to him under his contract with the Cattle
Co. as security for the amount then due Cramer from Hol-
land and for such further advances. The principal of the sum
then due Cramer from Holland, as stated in the contract, be-
ing the amount paid by Cramer as co-surety with one Red-
man on a note to one Webber for $2,000, said note having
been paid by said sureties, each paying one-half of the
amount due thereon. This contract was not in any wise to
affect the two orders of Holland to the bank; and it was
further provided, that should it become necessary for Cramer
to take his time, attention or services in caring for said
cattle, or in any manner protecting them or in protecting his
interest in said contract, he should have reasonable compen-
sation for his services in so doing. On March 4, 1899, Hol-
land and Cramer entered into a supplemental written agree-
ment by which the amount advanced or to be advanced by
Cramer was not limited to $1,000, but should cover all sums
that might be due Cramer in addition to the $1,000 pro-
vided for in the former contract. April 6, 1899, Cramer and
Holland entered into another written contract by which it
was agreed that the cattle should be gathered and shipped as
soon as possible and if Holland failed to do so, then Cramer
should have the right to do so and to employ the necessary
help for that purpose. On the following day, April 7, 1899,
still another contract in writing was entered into between
them which provided that any balance remaining after de--
ducting all other indebtedness of Holland to Cramer from
Holland's share of the profits arising from the transaction
should be applied, first, to the payment of Holland's note to

Cramer for $288, which was secured by a mortgage upon Mrs. Holland's real estate, and second, Holland's note to Cramer for $237.58, secured by chattel mortgage on certain horses. Thereafter Holland executed and delivered to defendants in error, Munkres & Mather, an order in writing as follows:

"BUFFALO, WYO., Apr. 13th, 1899.

"*N. E. Cramer, Buffalo, Wyoming.*

"Please pay to the order of Munkres & Mather the sum of $1,000.00, out of the proceeds of a certain order which you hold against the Gibson Cattle Company. This order is to take rank against said proceeds after the following claims and orders; one to W. H. Simms for about the sum of $500.00; orders to the First National Bank of Buffalo for the sum of $2,000.00 and interest; the notes and claims due yourself at the present time, with such small amounts as may be advanced by you hereafter for the express purpose of caring for, gathering and shipping the O T cattle and one order in favor of Albert Holland for $1,000.00, together with the specified interest on the various amounts.

"(Signed) W. H. HOLLAND."

Soon after this order was given it was presented by Munkres & Mather to Cramer, who took it into his possession and retained it until the trial of the case in the District Court. It is upon this order that the action is based; Munkres & Mather alleging that Cramer had sufficient funds in his hands to pay the same after paying the other amounts specified in the order, but refused to do so. Cramer denied that he had any funds belonging to Holland or that could be applied on the order. The pleadings in the case are quite lengthy and need not be set out here. The main issues in the case were: the amount of Holland's indebtedness to Cramer at the date of the order, and what amount of compensation, if any, Cramer was entitled to out of the funds as between himself and Munkres & Mather. The District Court, in addition to finding generally for Munkres & Mather and against Cramer, made special find-

ings of fact and conclusions of law. The court found
that Cramer had in his possession more than eight
hundred dollars of the funds growing out of the con-
tract with the Cattle Co. belonging to Holland after
paying all prior and just claims against said fund and
that the sum of eight hundred dollars was due to Munkres
& Mather on the order sued upon at the time of the com-
mencement of the action and that there were no just claims
against the same, and that Cramer accepted the order sued
upon and agreed to pay it out of the proceeds of the.sale of
the cattle. The court further found that Cramer had paid
a certain judgment rendered against him in favor of W. T.
Redman and that Cramer had earned $500 in taking care of
the cattle under his contracts with Holland. The court re-
fused to allow Cramer credit for the Redman judgment, and
we think rightly. Cramer returned as part of Holland's in-
debtedness to him the amount he had paid on the Webber
note and that was the principal of Holland's debt to him
mentioned in the contract and was the amount that seems
to have been in the minds of all of the parties when the order
was given and accepted. That was the amount of that par-
ticular item of indebtedness as stated by Cramer a short
time before the order was given, and was the amount de-
ducted in the settlement between Cramer and Holland about
September 12, 1899. The fact that he was afterward com-
pelled to pay Redman as co-surety on the Webber note one-
half the amount he collected from Holland on that account
could not affect the rights of Munkres & Mather in the funds
in Cramer's hands because at the time the order was given
and accepted Holland's indebtedness to Cramer on account
of the Webber note was regarded as the amount Cramer
had paid and for which he held Holland's note. In fact this
claim was not made until November 25, 1902, when a sup-
plemental answer was filed by Cramer setting up the judg-
ment. Up to the time that judgment was rendered Cramer
had denied all liability to Redman and claimed that Hol-
land's indebtedness on account of the Webber note was to
each of them individually for the sum each had paid. As to

the matter of compensation it is insisted by counsel for Cramer, that in as much as the court found that Cramer had earned $500 in taking care of the cattle that he was entitled to credit for that amount. If this finding is to be construed to mean that Cramer was entitled to retain this amount as against Munkres & Mather, then it is in conflict with the other special finding, that he had $800 belonging to Munkres & Mather, on their order, against which no just claims existed. A special finding will control as against a general finding when they are in conflict, but when there is a conflict between two special findings, one of which supports and the other conflicts with the general finding and judgment, the one that supports the judgment must control. (Warner v. Accident Association, 8 Utah, 431; Larkin v. Upton, 144 U. S., 19; Redelsheimer v. Miller et al., 107 Ind., 485.) But we do not regard the findings as contradictory. The view evidently taken by the District Court was, that while Cramer earned $500 in caring for the cattle, he had waived his claim so far as Munkres & Mather were concerned. There is evidence to the effect that in March, about a month before the order was given and accepted, and at a meeting at which Munkres, Holland, Cramer and Redman, who states that he was representing the Gibson Cattle Co., were present, when the number and value of the cattle and Holland's indebtedness were discussed, Cramer stated that he had no claim for services and that all he wanted was his money and interest. Again, in September, 1899, when he had a settlement with Holland he made a written statement of the account in which all of Holland's notes were stated with the interest on each computed, and including $180.48 book account, and he testified that he did not say a word at that time about compensation for services. There is also the testimony of several witnesses that in the latter part of October or the first part of November, 1899, he stated that he had $800, or about that sum in his hands, but as Redman had sued him, he was advised by his attorneys to hold it to protect against Redman or to fight that suit. There is also other evidence in the record bearing on

this question to which it is not necessary to refer. We have examined the entire evidence with care, and while it is somewhat conflicting, we think it amply supports the judgment, and that substantial justice has been done between the parties.

It is further insisted by counsel for plaintiff in error that the Cattle Co., the bank and other parties named in the order sued upon were necessary parties to the action. But it is admitted in argument that all of these parties had been paid and therefore had no interest in the funds in question. As to Holland, he was made a nominal party, but so far as the record shows he was not served with summons, but was present and testified as a witness. He had by the order in suit directed Cramer to pay the amount of the order to Munkres & Mather out of any balance of funds in his hands after satisfying the other claims mentioned. Without deciding whether or not Holland would have been a proper party in this action for the purpose of settling the rights as between Cramer and himself, it is sufficient to say that no objection was made to proceeding with the trial in the District Court until Holland was brought in; and having failed to do so it is too late, after judgment, to raise that question; especially as the record discloses the fact that his interest, if any, was known to all of the parties before the case came to trial.

We have gone into the entire record and find no prejudicial error therein, and the judgment of the District Court is therefore affirmed.                    *Affirmed.*

POTTER, C. J., and VAN ORSDEL, J., concur.