**HOWARD UNIVERSITY, Appellant,**

v.

**Joseph T. DURHAM, Appellee.**

**No. 14078.**

District of Columbia Court of Appeals.

Argued Sept. 4, 1979.

Decided Nov. 9, 1979.

Rehearing En Banc Denied Jan. 8, 1980.

Dorsey Edward Lane, Washington, D. C., for appellant.

John A. Keats, Washington, D. C., for appellee.

Before NEBEKER, MACK and PRYOR, Associate Judges.

PRYOR, Associate Judge:

Appellee, a former Dean of Howard University School of Education and Professor of Education, brought an action against the University seeking damages for an alleged breach of contract of employment. The Superior Court found the contract between the University and the appellee was divisible as to his duties as a tenured professor and those as dean; that appellee resigned from his position as dean but did not resign as an instructor; and that the University breached a provision of the employment contract by summarily terminating appellee as a professor without affording him an opportunity to be heard. The University appeals from this decision. As grounds for reversal, it is urged that the trial court erred: (1) by refusing to grant the University's motion for a mistrial when, after the jury rendered its general verdict in open court, it rendered inconsistent answers to special interrogatories; (2) by failing to instruct the jury on the question of whether appellee waived his right to a hearing; (3) in allowing the issue of divisibility of the contract to be decided by the jury; (4) in allowing the jury's finding that the appointment of appellee as dean and an instructor was a divisible contract to stand despite the fact that such finding was contrary to the evidence adduced at trial; (5) by allowing damages assessed to be based on speculation. Without reaching the question of damages, we find that the trial court erred in refusing to grant the University's motion for a mistrial, or in the alternative, to enter a judgment consistent with the jury's special findings, when, after four attempts to reconcile inconsistencies between answers to special interrogatories and the general verdict, the jury rendered a general verdict which was inconsistent with its answers to special interrogatories. We reverse and remand for further proceedings.

I.

In 1972, the University entered into a contract with appellee pursuant to which appellee was to be employed by the University as Dean of the School of Education and a full-time Professor of Education with tenure. Appellee was paid a base annual salary.

In 1974, the President of the University received a security report from the University Security Office that appellee had engaged in conduct raising questions of his fitness for continued employment. Thereafter, the University's President had a discussion with the appellee regarding the contents of the security report and appellee's future with the University. This meeting was followed by a subsequent meeting at which time appellee tendered to the Presi-

dent a letter of resignation from his position as Dean of the School of Education, requesting, however, that he be allowed to remain at the University as a professor. A second letter was sent to the President by appellee in which he again requested to be retained as a professor. The President responded to these letters by a letter in which he accepted appellee's tendered resignation as dean and informed appellee of his decision not to honor appellee's request to remain at the institution as a professor. The President reported the matter to the Board of Trustees which accepted appellee's resignation as Dean and terminated him as a professor.

Knowing of his right to have the matter referred to a formally convened Grievance Committee, as provided for in the University Faculty Handbook,[1] appellee failed to request a hearing, but rather left the institution and initiated this lawsuit.

The jury, responding to special interrogatories, found that: (1) in January of 1972 the University and the appellee entered into a contract whereby the appointment as a professor was divisible from the appointment of Dean of the School of Education; (2) the appellee resigned as dean but not as professor; (3) appellee knew or should have known of his right to a hearing before a Grievance Committee and did not exercise his right to the same; (4) the language in the University Faculty Handbook, modified by custom and usage, is interpreted to mean that a Grievance Committee hearing will be granted only upon request.

A judgment of $113,000 was entered against the University.

1. Howard University Faculty Handbook (Revised ed., Feb. 1968):

Section IV:

PROCEDURES IN DISMISSALS

A. PRELIMINARY PROCEEDINGS

1. When the fitness of a faculty member is under question, appropriate administrative officers shall discuss the matter with them directly. If a mutually satisfactory resolution does not resolve, the matter *shall be referred* to the Grievance Committee . . . . [*Id.* 11–12, emphasis supplied.]

## II.

The trial court committed error in entering a judgment on the jury's verdict which was inconsistent with the special findings.

■ Super.Ct.Civ.R. 49(b) provides that:
. . . When the answers [to special interrogatories] are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

While this jurisdiction has held that Rule 49(b) is permissive and not mandatory, *Knight v. Sontag*, D.C.Mun.App., 99 A.2d 217 (1953), it has long been settled that if after affording the jury all reasonable opportunity to reconsider its answers and to alter them to conform to the unanimous intent of the jury, the special findings remain irreconcilably inconsistent with the general verdict, the findings must control the verdict and judgment must be rendered on the special findings notwithstanding the general verdict. *Larkin v. Upton*, 144 U.S. 19, 12 S.Ct. 614, 36 L.Ed. 330 (1892). *See generally* 76 Am.Jur.2d *Trial* §§ 1197, 1214 (1974).

The trial judge instructed the jury to respond to four two-part special interrogatories and to render a general verdict in accordance therewith. The jury announced its general verdict and responded to each interrogatory which was submitted. An initial examination of the jury's response to the interrogatories revealed that the jury's response to one of the interrogatories was inconsistent with its response to another,[2]

2. SPECIAL INTERROGATORY NO. 4

A. Do you find that the intent of the parties in entering into a contract in January 1972 was that the phrase "shall be referred" used in the Faculty Handbook was *not modified by custom and usage?*

Yes  X
No ___

B. Do you find that the intent of the parties entering into a contract in January 1972 was that the phrase "shall be referred" used in the Faculty Handbook was modified by custom and

and that one of its responses was in conflict with the general verdict. The jury was given four opportunities to reconsider and clarify its response, yet it was unable to reconcile the inconsistencies, due to the jury's confusion as to the meaning of one of the interrogatories.[3]

 Despite the inconsistencies, the trial judge entered a judgment in accord with the general verdict. Rule 49(b) specifically states that where inconsistencies remain between one or more special answers and one or more is likewise inconsistent with the general verdict, judgment shall not be entered. It was, therefore error for judgment to be entered on the verdict.

### III.

 It should be noted that the trial judge properly ruled that the issue of divisibility *vel non* of the contract upon which appellee based his cause of action, was a question to be decided by the jury. Where a contract is unambiguous and the evidence does not support several reasonable interpretations, but instead, only one, the resolution of the divisibility issue is a question to be decided by the court. *Cowal v. Hopkins*, D.C.App., 229 A.2d 452, 454 (1967). But where several reasonable inferences can be drawn and resort must be made to extrinsic evidence, the question is to be resolved by the trier of fact. *See Wyoming Avenue Cooperative Association v. Lee*, D.C.App., 345 A.2d 456, 461 n. 8 (1975); *Rich v. Sills*, D.C.Mun.App., 130 A.2d 920, 922 (1952).

 There is no set answer to the question of when a contract is divisible and when it is entire. 3A Corbin on Contracts *Divisibility* § 694 (1960). There are merely suggested factors to be considered in resolving the issue. Consideration may be given to: (1) whether the parties assented to all the promises as a single whole, *Holiday Homes, Inc. v. Briley*, D.C.Mun.App., 122 A.2d 229 (1956); (2) whether there was a single consideration covering various parts of the agreement or whether consideration was given for each part of the agreement, *id.*; and (3) whether performance of each party is divided into two or more parts, the number of parts due from each party being the agreed exchange for a corresponding part by the other party. 6 Williston on Contracts § 860 (3d ed. 1962).

 From the above, it is clear that an apportionment of consideration is but one of several factors which must be considered in determining the parties' intent. The factfinder must look at all of the circumstances surrounding the execution of the contract and ascertain the parties' intent. If the jury finds that the parties intended that the contract be divisible, that finding will not be set aside on appeal unless unsupported by substantial evidence. *See* D.C. Code 1973, § 17–301(a).

 The employment contract here at issue is reasonably susceptible to different constructions. For example: the appellee was to perform two services but receive only one salary; the contract was to last for an indefinite period. These provisions raise a reasonable question of whether it was the intention of the parties to treat the contract as a whole. Accordingly, it was not error for the judge to submit the matter to the trier of fact.

 Under present circumstances, Super. Ct.Civ.R. 49(b) requires that the trial judge either grant a new trial or enter a verdict consistent with the special findings of the jury. We therefore reverse and remand for the trial court to decide which remedy is appropriate.

*Reversed and remanded.*

---

usage to mean that a Grievance Committee hearing would only be given when requested?

Yes   X

No   ___

**3.** *See* note 2, *supra.*