Henry W. GAINES, et al., Appellants,

v.

CONTINENTAL MORTGAGE AND INVESTMENT CORPORATION, et al.

No. 87-7220.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 23, 1988.

Decided Jan. 13, 1989.

Paul J. Riley, Washington, D.C., for appellants.

Robert E. Deso, with whom Carlos M. Recio, Washington, D.C., was on the brief, for appellee Continental Mortg. and Inv. Corp. Bradshaw Rost, Washington, D.C., also entered an appearance for respondent Continental Mortg. and Inv. Corp.

Jerome P. Friedlander, II, for appellees Tamco Retirement Fund and Arthur L. Walters, Trustee.

James E. Mitchell entered an appearance Pro Se.

Before WALD, Chief Judge, MIKVA and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

Opinion concurring in part and dissenting in part filed by Circuit Judge MIKVA.

D.H. GINSBURG, Circuit Judge:

Plaintiff-appellants Henry W. Gaines and Joann Gaines sued, and then settled their case against, Continental Mortgage and Investment Corporation, Tamco Retirement Fund, and various individuals. Plaintiffs now challenge a ruling by the district court denying their motion to enforce or, alternatively, to rescind the Settlement Agreement. We affirm.

## I. BACKGROUND

As of September 1985, the plaintiffs owned a home in northwest Washington, D.C. They were then in arrears on their purchase money mortgage, the balance of which was slightly less than $15,000, and on their taxes on the property. Defendant George E. Granse arranged for defendant Continental to make a loan to the plaintiffs which would allow them to satisfy these obligations and to receive about $10,000 in cash to pay off other debts. Plaintiffs therefore executed a promissory note (the "1985 Note") in the amount of $35,000, secured by a trust deed on their home. Defendants James E. Mitchell III and Arthur L. Walters were named as trustees under the security instrument. Subsequently, Continental assigned the note to defendant Tamco.

In August 1986, plaintiffs filed a civil action against the above-named defendants and others, seeking to rescind the 1985 Note and the corresponding trust deed as illegal and unconscionable contracts, to enjoin exercise of the power of sale contained in the trust deed, and to receive penalties under the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. The complaint also alleged damages (1) against all defendants for violation of the District of Columbia

Consumer Protection Procedures Act, D.C. Code 28–3905(k)(1) (1981); (2) against Mitchell for "breach of duty as a settlement agent"; and (3) against Granse for fraudulent misrepresentation in arranging the loan. Continental cross claimed against Mitchell and Granse, and Mitchell cross claimed against Granse, for indemnification.

After some negotiation, the parties advised the district court that settlement appeared probable. On May 12, 1987, the court, therefore, dismissed the action without prejudice for thirty days. Dismissal without prejudice was renewed twice thereafter. The final order of the district court, entered on June 30, provided that the action would stand dismissed without prejudice until July 20, after which, if settlement were not consummated, the parties could move to reopen the action. Timely settlement not having been effected, the plaintiffs moved to reopen the case, and the district court ordered the parties to appear at a "status/settlement conference" on July 29.

On that date, the parties entered into a "Settlement Agreement" constituting "a complete and final settlement of their claims and cross claims." Continental agreed to make a new loan of $35,000 to plaintiffs, who would, in turn, use that sum and an additional $4,371 to pay Tamco the principal and interest, respectively, due on the 1985 Note. Granse and Mitchell were to share equal responsibility for any "fees, points, lender's title insurance, or charges of any kind normally associated with a real estate settlement transaction and release" of the 1985 Note. The agreement expressly provided, however, that "Granse and Mitchell shall not be responsible for any encumbrance of record or unpaid taxes." Mitchell was to conduct the settlement without charge. Tamco waived certain late fees, penalties, and attorneys fees due to it under the 1985 Note. Finally, plaintiffs were to assign to Continental the lease they had apparently made of their property.

In addition to all of the foregoing, the Settlement Agreement specified that Mitchell would pay plaintiffs $2,000 and Granse would pay them $1,000 "on or before the date of settlement," which was to be "as soon as possible, by August 15, 1987." Granse would pay an additional $5,000 later pursuant to a "Final Judgment (Consent)" which he obligated himself to sign. The $1,000 and $2,000 payments from Granse and Mitchell, respectively, were designed to reduce (to $1,371) the amount that plaintiffs would have to bring to the closing in order to pay off the 1985 Note. On July 30 the district court entered a "Final Judgment (Consent)" ordering Granse to pay plaintiffs $5,000 in satisfaction of their claims directly against him, without Granse admitting liability or fault.

Before the August 15 deadline for closing, a title search revealed a water and sewer lien on plaintiffs' property. Because plaintiffs did not remove the lien by August 15, the scheduled closing never took place. When the time for closing had passed, Tamco began foreclosure proceedings on the 1985 Note; and plaintiffs, by motion in the district court, sought specific enforcement or, in the alternative, rescission of the Settlement Agreement. The district court denied their motion, finding it implicit in the title insurance provisions of the agreement that plaintiffs would tender clear title as a condition precedent of the new loan closing. Since plaintiffs failed to meet this condition, the court released all of the defendants from their obligations under the Settlement Agreement, noting, however, that the Final Judgment (Consent) against Granse survived. The court then entered an order dismissing the case with prejudice.

Joann Gaines thereafter filed for bankruptcy. Plaintiffs' property was sold at foreclosure, subject to their right of redemption, which they exercised by selling the property at its market value of $73,000. The 1985 Note was paid from the proceeds of this sale.

On this appeal, plaintiffs argue that all parties to the Settlement Agreement labored under the misapprehension that the "plaintiffs would present an unencumbered title." Under established principles of con-

tract law, they contend, such a "mutual mistake of fact" concerning the existence of a lien on their property invalidated the Settlement Agreement, and entitled them to rescission or reformation of that contract in order to conform it to the parties' intentions. Alternatively, they argue that their unilateral breach should excuse only Continental and Tamco, and that the district court abused its discretion by releasing Granse and Mitchell from their obligations under the Settlement Agreement.

## II. MOOTNESS

This court will "dismiss appeals as moot when events during the pendency of the appeal obviate the possibility of meaningful relief." *Public Media Center v. FCC*, 587 F.2d 1322, 1326 (D.C.Cir.1978). Defendants Continental and Tamco—the only appellees that filed briefs in this court—argue that the sale of plaintiffs' property at market value, and the resulting satisfaction of the 1985 Note, preclude plaintiffs from getting "meaningful relief" in court. We disagree.

If we were to accept plaintiffs' argument that the Settlement Agreement should be set aside as a contract based upon a mutual mistake of fact, they could reopen their civil case before the district court. While the several counts of their original complaint that sought injunctive relief from the now satisfied 1985 Note may now be moot, the counts that stated claims for damages under federal and District of Columbia law are not moot. That is, the events that occurred during the pendency of this appeal would not prevent plaintiffs from now getting "meaningful relief" in the form of damages. We therefore conclude that this appeal is not moot.

## III. MUTUAL MISTAKE

The strong policies favoring enforcement of settlements require that "[o]ne who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity...." It is enough, however, if there was "a mutual mistake under which both parties acted." *Callen v. Pennsylvania Railroad Co.*, 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948). Here, plaintiffs allege that all of the parties labored under a mutual mistake of fact, *viz.*, that there was no lien against the property that was to serve as security for the refinancing arrangement contemplated by the Settlement Agreement.

The district court interpreted the Settlement Agreement, "enforceability of [which] is governed by familiar principles of contract law," *Village of Kaktovik v. Watt*, 689 F.2d 222, 230 (D.C.Cir.1982), as implicitly obligating plaintiffs to deliver clear title at the time of closing. This was clearly the correct interpretation, and plaintiffs' mutual mistake argument is as clearly a unilateral afterthought.

The Agreement expressly provided that Granse and Mitchell would pay for "lender's title insurance," but specified that they would bear no responsibility for "any encumbrance of record or unpaid taxes." These terms make it clear that the parties did not enter into the contract on the mistaken assumption that plaintiffs' title was unencumbered. Rather, they took care to allocate the risk that an impediment to title would later come to light.

The plain import of the language calling for Granse and Mitchell to pay for title insurance but relieving them of any responsibility for encumbrances is to leave with plaintiffs the usual obligation of owner-borrowers to deliver clear title in order to secure a loan. When plaintiffs failed to do so, they effected a unilateral breach of the Settlement Agreement. In these circumstances, the district court was fully justified in releasing the non-breaching parties from their corresponding promises to provide refinancing.

## IV. RELEASE OF GRANSE AND MITCHELL

Plaintiffs maintain that, even if it properly excused Continental and Tamco from their obligations under the Settlement Agreement, the district court abused its discretion by releasing Granse and Mitchell, since "payment by [these individuals] was the bargain for release of all claims by

plaintiffs against them unrelated to the ... claims against Continental and Tamco." We find it apparent from the face of the Settlement Agreement that the release of Granse and Mitchell was not an abuse of discretion. The Settlement Agreement specifically recited that it was a "complete and final settlement of [all] claims and cross claims" then in dispute among the parties. Unlike our dissenting colleague, we take the parties at their word, which is that the Settlement encompassed Continental's "cross claims" for indemnification against Granse and Mitchell. *See Hershon v. Gibraltar Bldg. & Loan Ass'n.*, 864 F.2d 848, 852 (D.C.Cir.1989) (holding contractual release from "any and all Claims" to be unambiguous under Maryland law). Continental agreed to a new loan in return for, *inter alia*, the Gaines's settlement of the litigation. Granse agreed to pay $1,000 immediately in order, as plaintiffs acknowledge, to facilitate the refinancing, and thereafter to pay $5,000 pursuant to the separate consent judgment covering plaintiffs' allegations against him. Given that the $5,000 consent judgment related, by its terms, only to plaintiffs' direct claims against Granse, the clear implication is that his $1,000 payment under the Settlement Agreement was the price for Continental's release of its cross claim against him for indemnification.

The district court's ruling on the release of Granse and Mitchell, far from offering "no rationale," Dissent at 381, is the source of the distinction between the separate consent order governing the plaintiffs' direct claims against Granse and the additional $1,000 payment to be made in conjunction with the Continental–Gaines refinancing arrangement. When asked how the release of Continental would affect Granse and Mitchell, the district court responded:

> The settlement agreement is over. The plaintiffs have breached it by not fulfilling the plaintiffs' condition [to deliver clear title]. The thing that survives is the consent judgment *that was a separate document between Mr. Granse and the plaintiffs.*

(Emphasis added.) The necessary import of this statement is that the failure of the plaintiffs to include in the "separate document" (embodying Granse's $5,000 payment for settlement of direct claims) the further obligation of $1,000 indicates that the latter payment is in settlement of a different claim, *viz.*, the separate cross claim for indemnification.

Since no request for indemnification could lie against Granse after settlement of the Gaines's underlying claim against Continental, moreover, it would be quite peculiar for the parties to arrange a payment in settlement of Continental's cross claims against Granse that would survive independently of the disposition of the Gaines's direct claims against Continental. Plaintiffs' failure to produce clear title therefore carried with it two consequences. First, as we have seen, it relieved Continental of its obligation to make the new loan; and second, by so doing, it relieved Granse of his promise to assist Continental by paying for part of the refinancing.

The terms setting forth Mitchell's $2,000 obligation track those used to describe Granse's promise to contribute $1,000 to the refinancing arrangement, which, as we have seen, was dependent upon the closing of the loan transaction between plaintiffs and Continental. Given this parallel construction, the face of the agreement suggests an identity of purpose for the two clauses. Thus, Mitchell's obligation to pay $2,000—like Granse's promise to contribute $1,000—toward the refinancing remained contingent upon the Gaines's claims against Continental, which alone could give rise to a cross claim for indemnification. As a result, when plaintiffs' unilateral breach relieved Continental of the obligation to extend a new loan, it also relieved Mitchell of his promise to assist Continental in refinancing plaintiffs' loan by bringing $2,000 to the closing.

The foregoing is the most obvious, but not the only possible explanation of Mitchell's and Granse's undertakings, of course. It is plaintiffs' burden, however, to show that the district court abused its discretion in ruling that their breach terminated the

Settlement Agreement as to all defendants party to it. Since a non-abusive rationale for the district court's ruling is apparent from the face of the Settlement Agreement, and since that court appears to have relied upon that rationale, we affirm the release of Granse and Mitchell.

## V. Conclusion

Finding no basis on which to disturb the district court's disposition of plaintiffs' motion to enforce or, alternatively, to rescind the Settlement Agreement, we affirm the ruling of the district court.

*So ordered.*

MIKVA, Circuit Judge, concurring in part and dissenting in part:

I agree that the district court's ruling should be affirmed to the extent that it held that appellants, Henry and Joann Gaines ("appellants" or "Gaineses"), had breached the settlement agreement by not disclosing the $2,000 water bill lien and that the agreement could not be reformed or the original suit reopened on the ground of mistake. That relieves Continental Mortgage and Investment Corp. ("Continental") of any further liability to appellants. The breach directly affects the bargain between appellants and Continental, and I concur in that part of the majority's holding. It does not follow that the other defendants below should derive a windfall benefit from that situation; accordingly, I do not follow in the holding of Part IV of the majority opinion. I believe that on this record we cannot say that appellants' breach of the settlement agreement relieved Messrs. James E. Mitchell III ("Mitchell") and George E. Granse ("Granse") of their obligations to pay appellants $2,000 and $1,000, respectively, under the terms of the settlement agreement. The district court never considered the possibility that those obligations might be independent of the Gaineses' claims against Continental and Tamco Retirement Fund ("Tamco"). The claims against Mitchell and Granse should be remanded to the district court.

The majority concludes that the payments by Mitchell and Granse of $2,000 and $1,000, respectively, to appellants on or before the date of settlement was the price for *Continental's* release of its cross-claims against Granse and Mitchell for indemnification. The majority is not deterred from adopting this interpretation by the fact that none of the parties has ever suggested it to us. What the settlement agreement really represented, according to the majority, was a $3,000 payment by Continental to the appellants, in addition to a pledge to refinance the loan, and a separate claim by Continental against Granse and Mitchell for the sum of $3,000. Continental's dual role as payor and recipient washed out, and Granse and Mitchell paid directly to the Gaineses. When the appellants failed to provide clear title, refinancing became impossible, and Continental's obligation to pay the appellants $3,000 disappeared. The liabilities of Granse and Mitchell were extinguished simultaneously.

This analysis, however, is flawed. The majority simply asserts, without any foundation, that $3,000 represented the value of a claim by the Gaineses against Continental—and of Continental's cross-claims against Granse and Mitchell—rather than part of the value of the Gaineses' direct claims against Granse and Mitchell. It recognizes that its interpretation is not "the only possible explanation," Majority opinion ("Maj. op.") at 379. Indeed, the majority's conjecture seems to me the *least* likely possible explanation, because it invents a separate $3,000 claim by the Gaineses against Continental—a claim never alleged or covered in the settlement agreement.

The majority also devises a $3,000 cross-claim by Continental against Mitchell and Granse which is equally unsupported by the record. The district judge never referred to it in her ruling. The settlement agreement did not mention any cross-claims by Continental against either Granse or Mitchell, except for the boiler-plate language in the agreement referring to the settlement of all "claims and cross claims." The district court's records do reveal, as the majority correctly notes, that Continental, in its answer of September 22,

1986, cross-claimed against Granse and Mitchell, and that Mitchell, in his answer of March 10, 1987, cross-claimed against Granse. Yet on appeal none of the parties brought the cross-claims to our attention, an omission that perhaps reflects the parties' own views that these cross-claims are not relevant to the interpretation of the settlement agreement.

A more plausible explanation than the majority's is that the parties intended the settlement agreement to be a divisible, rather than a unitary, contract. That is, the Gaineses' claims under the agreement against Granse and Mitchell were separate from the Gaineses' claims against Continental, and survived their failure to provide clear title. Under this view, the settlement agreement was composed of two independent contracts: appellants withdrew their suit against Continental and Tamco in exchange for a promise to refinance the 1985 loan, and appellants released their legal claims against Granse and Mitchell for a total of $8,000, $6,000 of which was to come from Granse and $2,000 from Mitchell. The failure of the Gaineses to remove the lien on their property may have prevented Continental from refinancing the loan, but it had no effect on Granse's and Mitchell's obligations under the settlement agreement. The extension of new credit to appellants was entirely separate from the settlement of the claims against Granse and Mitchell.

The different payment schedules do not indicate that the contract was unitary, as the majority suggests. Of the $8,000 total that Granse and Mitchell were to pay the Gaineses, $3,000 was intended to be used by appellants to satisfy the note held by Tamco. That was why the settlement agreement provided that it be paid "as soon as possible," in contrast to the $5,000 to be paid by Granse over the course of the next year under the Final Judgment (Consent) Order entered by the court. Otherwise, there was no difference between the $5,000 to be paid by Granse later, an obligation which the majority concedes survived the failure of appellants to remove the lien, and the $3,000 due at settlement.

The majority maintains that although its explanation of the settlement agreement is not the only possible one, the appellants have failed to show that the district court abused its discretion in denying their motion to enforce the settlement agreement because a "non-abusive rationale," Maj. op. at 380, is apparent from the face of the agreement. The record shows, however, that *no* rationale is apparent, because the district court never considered divisibility as a possibility; it made no factual findings regarding the interpretation of the settlement agreement, let alone those that are the predicate of the majority's holding today. The court below never imagined the theory proposed by the majority that the payment of $3,000 to the Gaineses also involved the release of Continental's cross-claims against Mitchell and Granse. The district court issued its ruling in the informal setting of a status conference and dismissed the claims against Granse and Mitchell orally in a spontaneous response to a question from appellants' counsel. Where a district court has "failed to make findings of fact essential to a proper resolution of the legal question," the proper course is remand, *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986).

I conclude that the majority has erred by simply assuming, on the basis of no findings by the district court and no evidence in the record, that the settlement agreement is unitary rather than divisible. A remand to the district court for interpretation of the agreement is necessary because the question of divisibility, like other aspects of contract construction, is a matter of the parties' intent unless the terms of the contract are wholly unambiguous. *See Davis v. Chevy Chase Financial Ltd.*, 667 F.2d 160, 169–70 (D.C.Cir.1981). Divisibility is an issue of fact that is particularly ill-suited to resolution by an appellate court, because many factors must be considered in determining the parties' intent as to the divisibility of a contract. As the District of Columbia Court of Appeals has held:

There is no set answer to the question of when a contract is divisible and when it is entire. There are merely suggested

factors to be considered in resolving the issue. Consideration may be given to: (1) whether the parties assented to all the promises as a single whole; (2) whether there was a separate consideration covering various parts of the agreement or whether consideration was given for each part of the agreement; and (3) whether performance of each party is divided into two or more parts, the number of parts due from each party being the agreed exchange for a corresponding part by the other party.

*Howard University v. Durham,* 408 A.2d 1216, 1219 (D.C.1979) (citations omitted).

In this case, a factfinder would have to take notice of the separate consideration for the defendants Continental, Granse, and Mitchell—the release of different legal claims by appellants. The factfinder would have to weigh the possibility that the parties meant to illustrate the divisibility of the contract by devoting a different paragraph of the settlement agreement to each defendant. The factfinder also would have to take into account the total absence in the settlement agreement of any references to possible cross-claims by Continental, and to any claim by the Gaineses against Continental for $3,000. I cannot predict with certainty what such a factfinder would decide in this case, but the majority has an even harder road to travel. I do know that the majority's assumptions go far beyond the facts contained in the district court's decision and the record before us.

\* \* \* \* \* \*

The principal may be small, but the principle is large. For the very reasons that we properly refused to allow appellants to reform the contract after their breach, we ought not reform this contract ourselves by assuming an indivisibility that was not found by the trial court and is not borne out by the record. I would remand the claims against Mitchell and Granse for further proceedings.